**James W. POTTER, Percy Potter and Eugene Potter, d/b/a Potter Coal Company, Appellants,**

**v.**

**Cecil CHANEY, Elkfoot Mines Corporation, and Woodside Mines Corporation, Appellees.**

Court of Appeals of Kentucky.

May 4, 1956.

L. D. Mays, Pikeville, for appellants.

Baird & Hays, Pikeville, for appellees.

STEWART, Judge.

Appellants, James W. Potter, Percy Potter and Eugene Potter, d. b. a. Potter Coal Company, sought below to hold appellee, Cecil Chaney, personally liable for the indebtedness due them on coal which they averred they sold to appellee but which the latter claimed was in fact sold and delivered to Elkfoot Mines Corporation of

which he was president and purchasing agent.

The Bevins-Chaney Coal Company was incorporated in March, 1950, with appellee as its president, and a copy of its charter was filed in the office of the Pike County court clerk March 27, 1950. Appellants delivered their first coal to this company and received a check therefor from the corporation on April 15, 1950. In January, 1951, P. F. Bevins, a large shareholder in the Bevins-Chaney Coal Company, disposed of his interest therein and shortly thereafter the corporation's charter was amended, and its name was changed to Elkfoot Mines Corporation, appellee retaining his position as president. Appellants continued to sell coal to the corporation until it ceased to operate on March 29, 1954, because of financial difficulties. In the early part of June, 1954, it filed a voluntary petition in bankruptcy and liquidated its affairs.

The corporation during its existence was engaged in mining operations, having its office in Pikeville, and it owned a coal dock located about 25 miles east of that city near the mouth of Big Creek, a tributary of Levisa Fork of the Big Sandy River. The major part of its business, however, consisted of buying coal for shipment to the market from small truck mines scattered over that area. It was the task of appellee to make outside contacts for the purchase of coal, and it was he who negotiated arrangements with appellants to buy their coal "as long as it was clean and we could sell it." Checks totaling $170,000 were issued to appellants by the corporation for the period of time involved.

The debt sued upon amounts to $4,741.50 and it represents coal sold to Elkfoot Mines Corporation from March 16 to March 29, 1954. Appellants maintained, and their testimony was to the effect, that from the beginning to the end of their association with appellee they thought they were dealing with him as an individual and believed he personally was buying their coal. All of them declared appellee never at any time mentioned the corporation as the purchaser of their coal nor did he ever state he was

its president. They said they delivered the coal to a loading place known to the people in the vicinity as "Chaney's Dock." Appellant, Eugene Potter, testified appellee did not disclose to appellants that he had acted as agent of the corporation until it went into bankruptcy. He asserted he then approached him about settling the balance due them and, according to him, appellee assumed sole responsibility for the debt, saying: "I'll pay it personally if I have to sell my home."

Appellee testified he never undertook any transactions for the purchase of coal either with appellants or with others except in his capacity as president of the corporation. He denied he ever promised to make payments to appellants directly or that he would personally reimburse them. Appellee's evidence also established that all payments made to appellants were by checks drawn on the corporation, signed in each instance by appellee as president or by the chairman of the board, and with the corporate name printed on the upper left hand face of the check delivered to them. It was not contradicted that appellants, or some of them, at various times came to the corporation's office in Pikeville for their checks, and that weight sheets bearing the name of the corporation were furnished appellants for each delivery of coal. Appellee stated there was a sign on the premises, open to view, declaring "Elkfoot Mines Corporation" was covered under the provisions of the Kentucky Workmen's Compensation Act.

It was pointed out that appellants filed a claim for their debt with the trustee of the bankrupt corporation, but it was contended this was done at the insistence of appellee and upon his personal commitment that, if they did not receive payment through that channel, he would see that their debt was nevertheless satisfied out of his individual property. Appellee denied he made this assurance.

Appellee moved for a directed verdict both at close of appellants' evidence and at the conclusion of all the evidence. The lower court refused to peremptorily instruct for appellee and the case was sub-

mitted to the jury which rendered a verdict for appellants in the full amount. Appellee thereafter moved for and was granted a judgment notwithstanding the verdict and the complaint was dismissed.

■ The question presented in this appeal is whether appellants knew, or were chargeable with knowledge of the fact, that they were dealing with the corporation and not with appellee as an individual. We think the record is clear and convincing that appellants knew at all times they were doing business with the corporation and not with appellee personally.

■■ It is, of course, fundamental that an officer of a corporation will not be individually bound when contracting as an agent of that corporation within the scope of his employment. See Taylor, Shelby & Co. v. Williams, 17 B.Mon. 489, 56 Ky. 489; Byrne v. Bourland, 3 Ky.Op. 163. After the principal is disclosed, the agent is not liable, generally speaking, for his own authorized acts, or for the subsequent dealings between the third person and the principal. See 2 Am.Jur., Agency, Sec. 404, pp. 316–317.

■ A principal is disclosed if "at the time of a transaction conducted by the agent, the other party thereto has notice that the agent is acting for a principal and of the principal's identity." See Restatement of the Law of Agency, Vol. 1, Sec. 4, p. 15; Resnick v. Abner B. Cohen Advertising, Inc., D.C.Mun.App., 104 A.2d 254. The contract in this case was oral and was one of a series of contracts of like kind extending over a period of almost four years; in other words, the dealings were on a day-by-day basis. The inquiry, therefore, boils down to whether appellants at the time of the agreement had such notice of the principal's existence and of its identity that they knew or would have reason to know or should have known appellee was not contracting as an individual. See Restatement of the Law of Agency, Vol. 1, Sec. 9, p. 28.

Applying the foregoing tests to the instant case, we find that although the testimony as to appellants' knowledge of the existence of appellee's agency was in conflict, there was ample proof upon which a court could hold as a matter of law that appellee's agency was fully revealed. The corporation was already in existence when appellants put in their truck mine and began to sell coal. Checks in payment for appellants' coal, given over a period of nearly four years, were always drawn on the corporation and signed by appellee in his capacity as president (except in 1953 the chairman of the board executed four of the checks filed as exhibits). We believe these facts, standing alone, were sufficient to put appellants on notice that appellee transacted business with them on behalf of the corporation. But there was other evidence in this connection. Appellants also received a weight receipt for each load of coal they delivered, which receipt indicated by the name of the corporation at the top that the coal had been received by the latter and not by appellee as an individual. Appellants, as has been shown, came to the Pikeville office of the corporation on many occasions to see about or to get their checks, although appellee lived at Mouthcard, near their mine and some 35 miles from Pikeville. The facts we have recited were uncontroverted and we believe the conclusion is inescapable that appellants knew they were selling coal to the corporation and not to the president of the corporation as an individual.

■ Nor may appellants enforce the alleged parol agreement they maintain appellee made with them to take care of the defunct corporation's indebtedness. Assuming arguendo appellee personally promised to pay appellants for the coal if the estate of the bankrupt corporation did not settle the debt, such a contract, being oral, was unenforceable under the Statute of Frauds which states that "No action shall be brought to charge any person: * * * Upon any promise to answer for the debt, default or misdoing of another; * * * unless the promise * * * be in writing and signed by the party to be charged therewith * * *." See KRS 371.010.

Wherefore, the judgment is affirmed.