HUBERT M. HOWELL, T/A HOWELL OIL COMPANY v. HERBERT SMITH, T/A ATLANTIC BLOCK COMPANY.

(Filed 31 January 1964.)

**1. Principal and Agent § 7—**

An agent who makes a contract for an undisclosed principal is personally liable as a party to it unless the other party had actual knowledge of the agency and of the principal's identity.

**2. Same;   Corporations § 12—**

An agent acting for a principal in the purchase of materials has the duty to disclose the fact of agency and the name of his principal if he would relieve himself of personal liability, and the use of a trade name or the existence of means by which the seller might discover the fact of agency is not sufficient for this purpose, nor will the discovery of the fact of agency by the seller after the extension of credit relieve the agent of personal liability.

**3. Same—**

Where over a period of years plaintiff, in selling petroleum products, deals with defendant as an individual, checks in payment of the products being signed individually by defendant or the manager under a printed trade name without disclosing the fact of incorporation, the fact that five statements for

products sold by the corporation to plaintiff over the period of several years had the word "Inc." printed after the trade name, although such word did not appear on the invoices, *held* insufficient to establish actual knowledge by plaintiff that he was dealing with a corporation.

APPEAL by defendant from *Morris, J.,* May 1963 Session of WAYNE.

Plaintiff seeks to recover from the defendant Herbert Smith, trading as Atlantic Block Company, the sum of $2,054.13, alleged to be the balance due for petroleum products which plaintiff sold and delivered to the defendant. As a defense to the action defendant alleged that, as plaintiff well knew, he had purchased the products as an officer of a corporation which was solely liable for the debt.

In brief summary, plaintiff's evidence tended to show these facts: Prior to April 1957 plaintiff had furnished petroleum products to A. J. Marlow, trading as Atlantic Building Block Company. On April 5, 1957, Marlow introduced plaintiff's salesman Combs to defendant and informed Combs that he was selling out to defendant. Combs and defendant agreed that plaintiff would continue to furnish petroleum products to Smith as he had to Marlow. A few days later Combs delivered one hundred and sixty gallons of gasoline to the defendant who signed the ticket which was made out to him in his own name. At that time defendant informed Combs that he was changing the name of the business to Atlantic Block Company, but he did not tell him that the business was incorporated. Its status was not mentioned. Plaintiff's manager checked the credit rating of Herbert Smith, trading as Atlantic Block Company, and then set up the account on his ledger in the name of Atlantic Block Company. Thereafter he observed signs erected throughout Wayne County advertising Atlantic Block Company.

The account in suit covers deliveries made from June 5, 1959 to December 31, 1960. Subsequent to the bringing of this action, on August 20, 1960, defendant made a payment on this account by a check with the name Atlantic Block Company printed above the signature line and signed by defendant Herbert Smith without any official designation.

While plaintiff was furnishing petroleum products under the contract with defendant, he made at least five purchases of blocks from Atlantic Block Co. At least one of the delivery tickets accompanying these purchases bore the name "Atlantic Building Block Company." Bills were rendered on September 30, 1957; October 31, 1957; November 30, 1957; January 1, 1958; and February 1, 1958. These bills came through the mail and were received by plaintiff's manager, Herbert H. Howell, but he did not "examine each of them specifically." At the top of each statement was imprinted the name "Atlantic Building Block Co., Inc." The amount of these bills was credited against the account of Atlantic Block

Company. Plaintiff also received at least one invoice for these blocks which read "bought of Atlantic Building Block Co." On July 5, 1960 plaintiff received an invoice for four stepping stones with the name "Atlantic Block Company" appearing at the top.

Defendant's evidence tended to show: On March 19, 1946 the Secretary of State issued a certificate of incorporation to Atlantic Building Block Company. Defendant, his wife, and brother bought the corporate stock from A. J. Marlow to whom it was pledged to secure the unpaid balance of the purchase price. Defendant became vice-president of the corporation and Glenn Maready, a salaried employee of the defendant, became the president and manager although he owned no stock. Except for the change in management, the business continued to be operated by the new owners at the same location and in the same manner as before the sale. A sign, "Atlantic Building Block Company," remained on the premises. When plaintiff's manager asked defendant how to bill the new account he was told that Mr. Marlow's account at the bank would continue in the name of Atlantic Building Block Company and, to avoid confusion, defendant's account would be in the name of Atlantic Block Company. Whether the business was incorporated was not discussed.

Defendant had some letterheads, billheads, and envelopes imprinted with the name "Atlantic Building Block Co., Inc." These envelopes were used in mailing statements to debtors. He also had some checks printed with the name Atlantic Block Company above the signature line. Maready had invoices imprinted with the name "Atlantic Building Block Company." Both defendant and Maready signed checks and in so doing, neither ever designated his position with the corporation. At the time of the sale of the stock, Marlow retained all the old accounts receivable and agreed to pay all existing debts of the corporation. Until his business forms were exhausted defendant had no others printed.

The jury returned a verdict in favor of the plaintiff for the amount claimed. From judgment on the verdict the defendant appealed assigning errors in the charge.

*Sasser and Duke by John E. Duke; Joseph H. Davis for plaintiff appellee.*

*James N. Smith for defendant appellant.*

SHARP, J. This case was heard at the Fall Term 1962 at which time the question of nonsuit was decided adversely to the defendant. *Howell v. Smith*, 258 N.C. 150, 128 S.E. 2d 144.

These rules are well established in the law of agency:

An agent who makes a contract for an undisclosed principal is personally liable as a party to it unless the other party had actual knowl-

edge of the agency and of the principal's identity. *Walston v. Whitley & Co.*, 226 N.C. 537, 39 S.E. 2d 375; *Lumber Co. v. Motor Co.*, 192 N.C. 377, 135 S.E. 115; 3 Am. Jur. 2d, *Agency* § 320; Restatement, *Agency* 2d § 322; 2 Williston on Contracts 3d Ed. § 284. The disclosure of the agency is not complete so as to relieve the agent of personal liability unless it embraces the name of the principal. The duty is on the agent to make this disclosure and not upon the third person with whom he is dealing to discover it. 3 Am. Jur. 2d, Agency § 317. It will not relieve the agent from personal liability that the person with whom he dealt had means of discovering that the agent was acting as such. 2 Williston on Contracts, 3d Ed. § 288. "Actual knowledge brought by the agent, or, what is the same thing, that which to a reasonable man is equivalent to knowledge, is the criterion of the law." *Conant Co. v. Lavin*, 124 Me. 437, 126 A 647. Mere suspicion and means of knowledge do not amount to actual knowledge. *Ell Dee Clothing Co. v. Marsh*, 247 N.Y. 392, 160 N.E. 651. "It is not sufficient that the seller may have the means of ascertaining the name of the principal. If so, the neglect to inquire might be deemed sufficient. He must have actual knowledge. There is no hardship in the rule of liability against agents. They always have it in their own power to relieve themselves, and when they do not, it must be presumed that they intend to be liable." *Cobb v. Knapp*, 71 N.Y. 348, 27 Am. Rep. 51; *Saco Dairy Co. v. Norton*, 140 Me. 204, 35 A 2d 857, 150 A.L.R. 1299; 1 Mechem on Agency 2d Ed. § 1413. The cases are in substantial accord that the use of a trade name is not as a matter of law a sufficient disclosure of the identity of the principal and the fact of agency. Annot., 150 A.L.R. 1303.

The liability of the agent is not exclusive. When the principal becomes known, the other party to the contract may elect whether he will resort to him or to the agent with whom he dealt unless the contract is under seal, a negotiable instrument, or expressly excludes him. *Hardware Co. v. Banking Co.*, 169 N.C. 744, 86 S.E. 706; Restatement, Agency 2d, §§ 186, 322; 2 Williston on Contracts, 3d Ed. § 286. Ordinarily, however, it is an alternative liability. The principal and agent are not jointly liable unless the agent has, by contract or by his conduct, added his own liability to that of the principal. *Rounsaville v. Insurance Co.*, 138 N.C. 191, 50 S.E. 619. It is competent for an agent, although fully authorized to bind his principal, to pledge his own personal responsibility instead. *De Remer v. Brown*, 165 N.Y. 410, 59 N.E. 129. The aggrieved party seeking damages must elect whether he will hold the principal or the agent liable; he cannot hold both. *Walston v. Whitley & Co., supra; Horton v. R. R.*, 170 N.C. 383, 86 S.E. 1020.

The right of the third party to sue the agent is not impaired by a discovery of the identity of the principal after the contract was made. Tiffany on Agency § 99. The disclosure of the principal comes too late to discharge the agent after the third party has extended credit, performed services, or entered upon the performance of an indivisible contract. To protect himself, the agent must disclose the fact that he is acting for a designated principal in time for the third party to determine beforehand whether he will accept the responsibility of the principal in the transaction. Knowledge of the identity of a principal acquired after the performance of the contract, cannot release the obligated agent to whom credit was extended and substitute a stranger to the transaction. *Whiting v. Saunders*, 51 N.Y.S. 211; *Curtis v. Miller*, 73 W. Va. 481, 80 S.E. 774; *Lull v. Anamosa Nat. Bank*, 110 Iowa 537, 81 N.W. 784; *Hospelhorn v. Poe*, 174 Md. 242, 198 A. 582.

The trial court adequately explained these rules of law as they apply to the instant case. Whether the agent or the principal was the contracting party was a question for the jury. *Howell v. Smith, supra.* Its verdict has established that at the time defendant made arrangements with plaintiff to furnish oil to the Atlantic Block Company he did not disclose that he was acting as the agent of a corporation. Therefore, he was the original contracting party and outside the usual rule that an officer of a corporation will not be individually bound when contracting within the scope of his employment as an agent of the corporation. *Potter v. Chaney*, Ky., 290 S.W. 2d 44.

However, the agreement in this case was not a single indivisible contract. Under it, upon order, plaintiff delivered oil to the Block Company from April 5, 1957 to June 17, 1960. If a third party to a contract involving an undisclosed principal discovers the agency and the identity of the principal while a continuing, divisible contract for the furnishing of goods or supplies is still executory, he then has the option to deal either with the agent or the principal with respect to the future performance of the contract. Ordinarily, the agent who made the original purchase is not liable if the third party continues to deliver goods after acquiring knowledge of the principal's identity unless he has agreed to be personally liable. *Brackenridge v. Claridge*, 91 Tex. 527, 44 S.W. 819.

The appellant's position is this: Conceding *arguendo* that plaintiff originally dealt with the defendant as the agent of an undisclosed principal in April 1957, by June 1959 he had acquired such information that he must have known that the defendant was the agent of a corporation and thereafter the corporation was solely liable. The defendant assigns as error that the judge (1) failed to explain "what constitutes

knowledge by a third person of the identity of the principal," and (2) failed "to instruct the jury that plaintiff must show that the identity of the defendant's principal remained undisclosed by defendant and was unknown to the plaintiff at the time of the last or unpaid items of the alleged account."

There is no evidence whatever that plaintiff knew that Mr. Marlow's business, the Atlantic Building Block Company, was a corporation. After April 1957 the invoices which Maready had printed bore the caption "Atlantic Building Block Company." It is a fair inference that for each of the five purchases for which plaintiff received a statement bearing the abbreviation "Inc.," he received an invoice without it. Payments received by plaintiff on the account in question were made by checks which gave no clue that a corporation was paying the bill. Below the printed name "Atlantic Block Company" appeared the individual signature of either the defendant or the manager, Maready. It is noted that Maready testified that he received his salary from the defendant personally. The sign at the site of the business identified it as "Atlantic Building Block Company," and fifty or sixty highway signs throughout the county proclaimed the name of the enterprise as "Atlantic Block Company."

To establish knowledge of agency on the part of the plaintiff, defendant must rely upon the five statements bearing the imprint, "Atlantic Building Block Co., Inc." which were sent when plaintiff purchased materials from the Block Company. Did the receipt of those statements constitute such evidence of knowledge as to require an instruction that the burden was on the plaintiff to satisfy the jury that the identity of defendant's principal remained undisclosed to him thereafter?

In *Saco Dairy Co. v. Norton, supra,* the defendant was manager of his mother's hotel, Breakwater Court. As a result of interviews with the defendant R. T. Norton in 1941, plaintiff sold a substantial amount of dairy products for use in the hotel. At no time did they discuss who owned the hotel. All bills were charged to the Breakwater Court and the total bill for 1941 was paid by a check signed "Kate F. Norton by R. T. Norton, Atty." The bills for 1942 were not paid and were the subject of the suit. The sole question was whether the agency of the defendant was disclosed to the plaintiff by the check or the trade name, or both. The trial court held that it was not and the Supreme Judicial Court affirmed. With reference to the check, the court said:

> "This was not, as a matter of law, a disclosure of the agency, nor was it evidence of such probative force that the Justice was bound to consider it conclusive of itself or in connection with other facts

submitted. . . . It might well be that the check was received in such routine manner that it had little or no significance on the question of knowledge of the plaintiff."

In *Phillips v. Hine,* 70 N.Y.S. 593, it was held that payment to plaintiff by the checks of a Savings & Loan Association was not necessarily notice to him that he was employed by the association. He had been given no express notice of that fact, and he had furnished the work and material for which he sought recovery at the request of the individual defendant.

In *McManor Plantation v. Rouse,* La., 55 So. 2d 631, defendant purchased potatoes from the plaintiff on May 4, 5, 6, and 8, 1950. The purchase of May 4th was paid for by a draft drawn on B Company. Similar drafts, subsequently dishonored, were given for the purchases on May 5th and 6th. Defendant's check was given for the sale on May 8th. When sued for the purchase price of the potatoes sold on May 5th and 6th, the defendant contended that the drafts drawn on B Company fixed plaintiff with notice that defendant was acting as its agent. The court said: "The only import, as we see it, of the name of the alleged principal appearing on the drafts, is whether that fact, coupled with other evidence, would amount to a disclosure by the agent of his principal. From the evidence taken as a whole, we do not think that it would."

Likewise, under the circumstances in this case, we do not think that the receipt of the five statements, even conceding they were mailed in envelopes bearing the name "Atlantic Building Block Co., Inc.," were sufficient to establish actual knowledge by plaintiff that he was dealing with a corporation. At the time the contract was made in April 1957, the defendant dealt with plaintiff's salesman and manager as an individual. He announced that he would operate under the name of Atlantic Block Company and not under the name by which Marlow had done business. When the first delivery of oil was made the defendant receipted for it as an individual. Thereafter every check sent as payment on account was signed by the defendant or his employee Maready individually. In view of the direct personal dealing by the defendant with the plaintiff, we do not think it can be inferred that plaintiff acquired actual knowledge that defendant represented a corporation from the incidental receipt of the five statements under all the circumstances detailed herein. Defendant had it in his power to relieve himself of all personal liability by contracting in the corporation's name. This he did not do, and plaintiff relied upon his credit. Therefore the hardship of the loss should not be imposed upon the plaintiff.

Under the evidence in this case, the omissions complained of were not error. The judge's charge sufficiently applied the law to the case.

In the trial below we find
No error.