MAS CORPORATION, T/A AND D/B/A HOLIDAY-WEST MOTEL, PLAINTIFF V.
ERNEST A. THOMPSON, T/A AND D/B/A THOMPSON SIGN CO., DEFENDANT
AND THIRD-PARTY PLAINTIFF V. MAHMOOD ALI SIDDIQUI AND SHAMSHAD
ALI SIDDIQUI, THIRD-PARTY DEFENDANT

No. 8218SC344

(Filed 3 May 1983)

1. **Rules of Civil Procedure § 56.7— denial of summary judgment motion—no review on appeal from final judgment**

    Denial of a motion for summary judgment should not be reviewable on appeal from a final judgment rendered in a trial on the merits.

2. **Trademarks and Tradenames § 1— liability for trademark infringement—construction of contract**

    A provision in a contract for the construction and installation of a motel sign that "It is understood that sections of the above described sign will be from a former sign, used so as not to infringe on Holiday Inn trade-mark" was ambiguous, and the evidence was sufficient to support a verdict finding that defendant sign installer was not liable under the agreement for infringement of the Holiday Inns, Inc. trademark by two motel signs constructed for plaintiff motel corporation but that the parties intended that plaintiff would be liable for any infringement.

3. **Trademarks and Tradenames § 1; Uniform Commercial Code § 10— signs free from trademark infringement—agreement by the parties**

    The provisions of G.S. 25-2-312(3) did not require defendant seller to deliver to plaintiff buyer motel signs free from any claim of trademark infringement where the parties had an agreement concerning trademark infringement, although such agreement was ambiguous.

4. **Principal and Agent § 7— undisclosed agency—liability of agent**

    A sign contractor could recover from a motel owner individually for signs constructed for a motel corporation where the owner signed the contract for the signs with his own name and said nothing about the motel corporation, and the contractor had no actual notice of the corporate principal, the use of "Holiday-West" on documents and correspondence being insufficient to establish actual knowledge by the contractor that he was dealing with a corporation rather than with an individual.

5. **Unfair Competition § 2— motel signs infringing on trademark—no unfair trade practices by sign contractor**

    Plaintiff's evidence was insufficient for the jury on the issue of unfair trade practices by defendant sign contractor in the construction and installation of two motel signs which infringed upon a motel chain's trademark where plaintiff presented no evidence that the contractor did anything which offended public policy or was immoral, unethical, oppressive, unscrupulous, or injurious.

APPEAL by plaintiff and third-party defendant from *Freeman, Judge.* Judgment entered 13 August 1981 in Superior Court, GUILFORD County. Heard in the Court of Appeals 14 February 1983.

This action arose out of a contract for the construction and installation of two signs at the Holiday-West Motel. Plaintiff filed suit against defendant Thompson asserting, in essence, that Thompson was liable for the alleged trademark infringement of the signs against the Holiday Inns, Inc. trademarks. Thompson filed a third-party complaint to recover the balance due on the contract for the signs, $10,246.12, and to enforce his lien against M. A. Siddiqui and S. A. Siddiqui, the owners of the Holiday-West Motel. MAS and the Siddiqui brothers filed motions for partial summary judgment against Thompson based on their assertion that Thompson's contract was with the corporation, not the Siddiquis, and he had breached an express promise that the signs would not infringe on the Holiday Inns, Inc. trademark. The motions were denied.

MAS and M. A. Siddiqui introduced the following evidence. Siddiqui was a Holiday Inns franchisee until his franchise was denied in August 1979. Thompson's employee, Larry Barber, went to remove the Holiday Inns sign from the motel. Siddiqui told Barber that he needed two new signs immediately. When Thompson brought Siddiqui a proposal for one sign Siddiqui told Thompson he would only look at a proposal for two signs. On 13 September Thompson returned with a proposal for both signs. According to Siddiqui, Thompson prepared the contract and designed the signs. The contract contained the following sentence: "It is understood that sections of the above described sign will be from former sign, used so as not to infringe on Holiday Inn trademark." After the signs were installed Holiday Inns, Inc. contacted Siddiqui and told him the signs were substantially similar to the Holiday Inns' script and were an obvious copy of the Holiday Inns' design. Siddiqui told Thompson about the complaints, and Thompson changed the sign by putting the word "motel" in the corners, and making some other alterations. Siddiqui had already paid Thompson $10,000.00. He refused to pay the balance due because the signs were subsequently found to be infringing and had to be removed.

After plaintiff presented his evidence defendant moved for a directed verdict. The court dismissed plaintiff's counts two and four, which were based on implied warranty and unfair trade practices and denied the motion on the remaining counts.

Thompson's evidence tended to show the following. He testified that he was asked to remove the Holiday Inns sign from plaintiff's motel. When his employee, Larry Barber, went to remove it Siddiqui said he needed a new sign immediately. Siddiqui drew a diagram of the sign he wanted, and said he needed it in ten days. Thompson called Siddiqui and told him that it would be impossible to put up a new sign in such a short time, but he had an old sign that he could use. He showed Siddiqui a sketch. Siddiqui was not interested in using that sign in front of the motel because it was too small, but said it would be usable on a large pole beside Interstate 85. Siddiqui wanted Thompson to put the Holiday Inns sign back up in front of the motel with no changes except to put the word "west" on it. Thompson told him he could not use any of the Holiday Inns' markings on it. Siddiqui insisted on the Holiday Inns' style of script, green paint, and white letters. Thompson had some sketches prepared, following Siddiqui's instructions. Siddiqui liked the drawings. Thompson explained the sentence "It is understood that sections of the above described sign will be from former sign, used so as not to infringe on Holiday Inn trade-mark," was inserted for two reasons: to explain that used material was in the sign, and that he was not going to use the Holiday Inns' trademarks. Siddiqui signed the contract with his own name and said nothing about MAS Corporation. Thompson said that when he told Siddiqui that the sign resembles the Holiday Inns' trademark, Siddiqui told him not to worry because it was his problem, and he had a lawyer to advise him.

On 25 March 1981 a judgment was entered enjoining MAS from using the Holiday Inns' "Great sign" or any imitation, including the signs at Siddiqui's Holiday West Motel. Siddiqui failed to pay Thompson the balance due on the contract.

The jury answered the following issues:

    1. Did the parties intend that the contract would mean the defendant, Thompson, would be responsible for any infringement?

Answer:    No

2. Did the parties intend that the contract would mean the plaintiff, MAS Corporation, would be responsible for any infringement?

Answer:    Yes

. . .

5. Was Mahmood Ali Siddiqui the agent for an undisclosed principal?

Answer:    Yes

. . .

6. Did Mahmood Ali Siddiqui breach the contract?

Answer:    Yes

7. What amount of damages has defendant, Thompson, sustained?

Answer: $10,041.12

*Hugh C. Bennett, Jr., for plaintiff and third-party defendant appellants.*

*Stern, Rendleman and Klepfer, by John A. Swem, for defendant appellee.*

VAUGHN, Chief Judge.

[1] Appellants' first four arguments are that the trial court erred in denying their motions for summary judgment and directed verdict, and in granting defendant's motion for directed verdict on two of appellants' claims. The purpose of summary judgment is to bring litigation to an early decision on the merits without the delay and expense of trial when no material facts are at issue. *McNair v. Boyette*, 282 N.C. 230, 192 S.E. 2d 457 (1972). That purpose cannot be served after there has been a trial. Denial of a motion for summary judgment, therefore, should not be reviewable on appeal from a final judgment rendered on a trial on the merits. *See Parker Oil Co. v. Smith*, 34 N.C. App. 324, 237 S.E. 2d 882 (1977); Annot., 15 A.L.R. 3d 899, 922 (1967). Appellants

present identical arguments for the trial court's allegedly erroneous denial of their motions for summary judgment and directed verdict. We shall consider their argument only with respect to the denial of their motion for a directed verdict. Upon motion for a directed verdict, all the evidence which tends to support the nonmovants' case against it must be taken as true and viewed in the light most favorable to the nonmovant, the nonmovant is entitled to the benefit of every reasonable inference which may be reasonably drawn from the evidence, and the motion may be granted only if, as a matter of law, the evidence is insufficient to grant a verdict for the nonmovant. *Kelly v. International Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). Any party may move for a directed verdict at the close of all the evidence. G.S. 1A-1, Rule 50(a). The court may direct a verdict for the party with the burden of proof when the credibility of the movant's evidence is manifest as a matter of law. *North Carolina National Bank v. Burnette*, 297 N.C. 524, 256 S.E. 2d 388 (1979). Appellants assign as error the trial court's denial of their motion for a directed verdict on three grounds. They contend that their motion for directed verdict should have been granted because the contract required Thompson to use sections of the former Holiday Inns sign so as not to infringe on the Holiday Inns trademark.

[2] The general rule is that when a written contract is unambiguous the interpretation is a question of law, but when the terms of the contract are ambiguous it is for the jury to ascertain the meaning. *Goodyear v. Goodyear*, 257 N.C. 374, 126 S.E. 2d 113 (1962). The following language "It is understood that sections of the above described sign will be from former sign, used so as not to infringe on Holiday Inn trade-mark" is ambiguous for three reasons. First, there is no promise by either party. The sentence began "It is understood," which, when viewed in the light most favorable to Thompson, does not clearly indicate that Thompson was promising anything.

Second, there was conflicting evidence as to the parties' intentions. Obviously, a contract should be construed, whenever possible, to give effect to the intentions of the parties. *Adder v. Holman & Moody, Inc.*, 288 N.C. 484, 219 S.E. 2d 190 (1975). Thompson said, in his deposition, that he included that sentence for two reasons: to let Siddiqui know that the sign would contain used materials, and to let him know that the Holiday Inns

trademark would not be used. According to Siddiqui, the sentence was included so as to hold Thompson responsible for furnishing signs satisfactory to Holiday Inns. Since there is conflicting evidence of the parties' intentions, the interpretation of the contract was a question of fact for the jury to decide.

Third, Siddiqui's subsequent conduct indicates he was engaged in a consistent pattern of misusing Holiday Inns trademarks. Subsequent conduct of the parties, after executing a contract, is admissible to show their intent. *Heater v. Heater*, 53 N.C. App. 101, 280 S.E. 2d 19, *review denied*, 304 N.C. 194, 285 S.E. 2d 99 (1981). Affidavits of two Holiday Inns employees show that in October 1980 and January 1981, more than a year after Siddiqui's franchise was terminated, Holiday Inns place mats, guest checks, towels, telephone facing strips, and commode cleanliness strips were found in Siddiqui's motel. These blatant infringements cast doubt on Siddiqui's assertion that Thompson promised not to infringe on the Holiday Inns trademark. Moreover, when Siddiqui asked Thompson to change the sign in December because of Holiday Inns' complaints he agreed to pay Thompson on a cost-plus basis, which indicates he did not consider Thompson liable for the infringements.

The above circumstances, which must be viewed in the light most favorable to Thompson, indicate there is ample evidence to grant a verdict in favor of the nonmovant, and the trial court did not err in denying the appellants' motions for a directed verdict.

[3] Appellants argue that, notwithstanding any issues of material fact in the interpretation of the contract, their motion for directed verdict should have been granted because G.S. 25-2-312(3) requires Thompson to deliver the signs free from any claim of infringement. G.S. 25-2-312(3) provides:

> *Unless otherwise agreed* a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications. (Emphasis added.)

Again, viewing the evidence in the light most favorable to Thompson, it is clear that G.S. 25-2-312(3) does not apply in this

MAS Corp. v. Thompson

case. Thompson's evidence tends to show that the parties agreed Siddiqui would be liable for any infringement. Even if it is unclear what, precisely, was "otherwise agreed," the statute only applies if nothing was said as to liability, and the other conditions are fulfilled. In this situation, where the parties thought they had agreed to something, what their agreement actually was is a question of fact for the jury.

[4] Appellants further argue that the trial court should have granted Siddiqui's motion for directed verdict because Thompson is barred from enforcing his lien against Siddiqui individually since Siddiqui was merely an agent of Holiday-West Motel. The rule, however, is that "[a]n agent who makes a contract for an undisclosed principal is personally liable as a party to it unless the other party had actual knowledge of the agency and of the principal's identity. . . . The duty is on the agent to make this disclosure and not upon the third person with whom he is dealing to discover it." *Howell v. Smith*, 261 N.C. 256, 258-259, 134 S.E. 2d 381, 383 (1964). In *Howell*, plaintiff sued defendant for the balance due for petroleum products he sold defendant. Defendant alleged that he purchased the products as an officer of the corporation, so the corporation was solely liable for the debt. Defendant contended that five invoices and checks with the corporate name which he sent plaintiff gave plaintiff notice of the principal corporation. The Supreme Court disagreed, holding that the receipt of five statements, mailed in envelopes bearing the corporate name, and the individually signed checks with the corporate name printed on them were insufficient to establish actual knowledge that plaintiff was dealing with the corporation, not the individual defendant. Moreover, the court said "the use of a trade name is not as a matter of law a sufficient disclosure of the identity of the principal and the fact of agency." *Howell v. Smith*, 261 N.C. at 259, 134 S.E. 2d at 384. Here, Thompson said, in his deposition, that Siddiqui "acted to me totally as an individual. He never referred to any corporation, any partner, any anything other than just him as an individual, is how I dealt with him." We find that since Thompson had no actual notice of the corporate principal, the use of "Holiday-West" on documents and correspondence does not preclude Thompson's recovery from Siddiqui individually.

[5] Appellants also assign as error the trial court's granting Thompson's motion for a directed verdict on the claims of

statutory warranty under G.S. 25-2-312(3), and unfair trade practices. We have already discussed why the statutory warranty was inapplicable in this case, and a directed verdict on this claim was appropriate. As to the claim of unfair trade practices, the statute, G.S. 75-1.1(a), provides: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." A practice is unfair when it offends established public policy or when it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Johnson v. Phoenix Mutual Life Insurance Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980). The appellants' evidence, taken as true and viewed in the light most favorable to the appellants, shows no evidence that Thompson did anything which offended public policy or was immoral, unethical, oppressive, unscrupulous, or injurious. Appellants contend that Thompson was deceptive when he filled his name in the blank on the contract which said "architect." Absent any indication that appellants read it or relied on it in any way the jury could not find this to be an unfair or deceptive act. Moreover, in their verdict, the jury found that Siddiqui had assumed responsibility for infringement, so any error of the trial court in not submitting the issue of unfair trade practices was harmless. *See Hendricks v. Hendricks*, 273 N.C. 733, 161 S.E. 2d 97 (1968).

We have carefully reviewed appellants' remaining assignments of error and find them to be without merit.

No error.

Judges WEBB and EAGLES concur.