SECOND DIVISION

MAY 23, 2000

1-98-4579

KIMCO CORPORATION, ) Appeal from the

) Circuit Court

Plaintiff-Appellee, ) of Cook County

)

) No. 95 L 15226

)

MURDOCH, COLL AND LILLIBRIDGE,)

INC., ) The Honorable

) David G. Lichtenstein,

Defendant-Appellant. ) Judge Presiding.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

The plaintiff and the defendant made a contract for the plaintiff to perform janitorial services on a month-to-month basis at a building managed by the defendant.  The defendant was acting as an agent for a limited partnership that owned the building.  When the partnership fell behind in its payments, two officers of the plaintiff and an officer of the defendant met to discuss the situation.  After the meeting, the plaintiff continued to perform under the contract.

The plaintiff eventually was paid the amount that was due prior to the meeting but has not received payment for the services performed after the meeting.  The plaintiff filed suit for the unpaid amount.  The defendant argued that the plaintiff could only seek payment from the building owner.  The trial court entered summary judgment for the plaintiff on the grounds that the defendant had not disclosed its principal at the time of contracting. 

The defendant appeals, arguing that:(1) for a divisible contract, any distinct portion of performance during which a principal is undisclosed does not affect an agent's liability for a portion during which the principal is disclosed; (2) the contract between it and the plaintiff was divisible on a monthly basis; and (3) summary judgment was inappropriate since there was an issue of triable fact as to whether the defendant had disclosed the identity of the building owner at the meeting. 

We reverse and remand.

FACTS

On May 29, 1992, the plaintiff, Kimco Corporation (Kimco), entered into a contract with the defendant, Murdoch, Coll & Lillibridge, Inc. (MC&L), to provide janitorial services at a building on North Dearborn known as the Fisher Building.  MC&L managed the building for its owner, The Fisher Building Limited Partnership.  Duane Usa, Kimco's vice president of marketing, signed the agreement on behalf of Kimco.  The contract was signed on behalf of MC&L by Mark Gluskin, an MC&L employee who had an office at the Fisher Building.  Colleen Tobias was the MC&L employee in charge of day-to-day management of the building.  The original contract proposal had been sent to Tobias.

Within a year the account was in arrears.  In February 1993, Usa and the president of Kimco, Elliot Tarson, met with the president of MC&L, Gary Gries, to discuss the situation.  Gries told them that MC&L was an agent for the true owner of the building, and the owner was having financial difficulties.  The owner was in default on its mortgage and the limited partners were unwilling to invest any more capital in the building.  The partnership was attempting to refinance, and the mortgagee, meanwhile, had imposed a "lock-box" arrangement on the building.  Under this arrangement, the owner could only pay for services already rendered, which created a problem because Kimco billed in advance.

The parties are in dispute, however, as to whether Gries ever actually told them the name of the owner during this meeting.  In their initial depositions, both Gries and Usa seem to have indicated that they did not remember whether Gries revealed the identity of The Fisher Building Limited Partnership.  Subsequently, however, Gries filed an affidavit asserting that he had told Usa and Tarson the exact name of The Fisher Building Limited Partnership at the meeting.  Usa then filed an affidavit swearing that Gries never mentioned the name of the building owner at the meeting.

Kimco continued to service the Fisher Building until August 23, 1993.  The arrearages in existence prior to the meeting were eventually paid, but Kimco was not compensated for the services it provided after the February meeting.

Kimco filed suit against the owner as well as MC&L on the basis that MC&L was the agent of an undisclosed principal and thus was liable on the contract.  The original complaint was voluntarily amended, and the next two complaints were stricken.  The final complaint named only MC&L as a defendant.  MC&L raised two affirmative defenses in its answer: (1) that it had disclosed the identity of its principal prior to or at the time of contracting; and (2) that it had informed Kimco of the identity of its principal at the February 1993 meeting and that subsequent to that time Kimco had been dealing with a disclosed principal. 

The trial court granted summary judgment in favor of Kimco, and on November 6, 1998, it awarded Kimco $91,724, a figure comprising $11,667 in fees and $25,000 in interest in addition to damages.  MC&L timely filed an appeal.  MC&L has agreed not to contest fees and prejudgment interest if liability is affirmed on appeal.  

MC&L argues that:(1) for a divisible contract, any distinct portion of performance during which a principal is undisclosed does not affect an agent's liability for a portion during which the principal is disclosed; (2) the contract between it and Kimco was divisible on a monthly basis; and (3) summary judgment was inappropriate since there was an issue of triable fact as to whether Gries had disclosed the identity of the building owner at the February 1993 meeting.

ANALYSIS

Summary judgment may be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 
Telenois, Inc. v. Village of Schaumburg
, 256 Ill. App. 3d 897, 901, 628 N.E.2d 581, 584 (1993).  Summary judgment should not be granted if reasonable persons could draw divergent inferences from the undisputed facts. 
Telenois
, 256 Ill. App. 3d at 901, 628 N.E.2d at 584.  In making its ruling, the trial court should construe the pleadings, depositions and affidavits in the light most favorable to the nonmoving party.  
Soderlund Brothers, Inc. v. carrier Corp.
, 278 Ill. App. 3d 606, 614, 663 N.E.2d 1, 7 (1995).

I

A principal is undisclosed when the third party does not know that the agent is contracting on another’s behalf.  A principal is partially disclosed when the third party knows that the agent is contracting on behalf of a principal but does not know the identity of the principal. See Restatement (Second) of Agency §4 (1958).  In this case, the principal was at most partially disclosed at the time of contracting.  While Kimco may have been notified that MC&L was acting as an agent, it was not notified of the principal’s identity.  It is a well-established general rule that an agent who contracts with a third party on behalf of undisclosed or partially disclosed principal is personally liable on the contract.  
Mawer-Gulden-Annis, Inc. v. Brazilian & Colombian Coffee Co.
, 49 Ill. App. 2d 400, 404, 199 N.E.2d 222, 225 (1964).  The reason for the rule is reliance; the third party is obviously relying on the credit of the agent and not that of the principal when the agent is contracting on behalf of an undisclosed or partially disclosed principal. 
Vander Wagen Bros., Inc. v. Barnes
, 15 Ill. App. 3d 550, 554, 304 N.E.2d 663, 665 (1973).  Agents are not unfairly burdened by such a rule.

“If the agent would avoid personal liability, the duty is on him to disclose his principal; it is not upon the party with whom the agent deals to discover the principal.  There is no hardship in this rule of liability against agents who do not disclose their principals; they always have it in their power to relieve themselves from such liability, and when they do not, it must be presumed that they intend to be liable.” 3 Am. Jur. 2d 
Agency
 §325 (1986).

MC&L acknowledges this rule, but urges that there is an exception, namely, that when an agent discloses the identity of his or her principal during the course of an executory, divisible contract, the agent is no longer personally liable if the third party elects to continue performance. 3 Am. Jur. 2d 
Agency
 §317 (1986).  The North Carolina Supreme Court formulated the exception as follows in the case of 
Howell v. Smith
, 261 N.C. 256, 134 S.E.2d 381 (1964):   

"If a third party to a contract involving an undisclosed principal discovers the agency and the identity of the principal while a continuing, divisible contract for the furnishing of goods or supplies is still executory, he then has the option to deal either with the agent or the principal with respect to the future performance of the contract.  Ordinarily, the agent who made the original purchase is not liable if the third party continues to deliver goods after acquiring knowledge of the principal's identity unless he has agreed to be personally liable." 
Howell
, 261 N.C. at 260, 134 S.E.2d at 385.

Similarly, a Kentucky court held that "[a]fter the principal is disclosed, the agent is not liable, generally speaking, *** for the subsequent dealings between the third person and the principal."  
Potter v. Chaney
, 290 S.W.2d 44, 46 (Ky. App. 1956). 

The parties have not cited nor have we found Illinois case law directly on point for the question of whether this state recognizes the exception urged.  But as no authority from any jurisdiction has been cited rejecting the exception, we recognize it on the strength of the cases from other states.

II

Kimco argues that even if the court recognizes this exception, it would not apply to MC&L because the contract between it and Kimco is entire, not divisible.  While there is not a precise test for contract divisibility, as a general matter
 "[a] divisible contract is one in which both parties have divided up their performance into units or installments in such a way that each past performance is the rough compensation for a corresponding past performance by the other party." 
Trapkus v. Edstrom’s, Inc.
, 140 Ill. App. 3d 720, 727, 489 N.E.2d 340, 346 (1986).

In determining whether a contract is divisible, as in other aspects of contract interpretation, courts attempt to effectuate the intent of the parties.  
Kaplan v. Keith
, 60 Ill. App. 3d 804, 808, 377 N.E.2d 279, 281 (1978). Of course, in reality, especially in a case that reaches litigation, the parties often will not have considered the question of divisibility in making their contract (3A A. Corbin on Contracts §694, at 283 (1951); Restatement (Second) of Contracts §240, Comment e (1981)), so in practice "[t]he test is whether, had the parties thought of it, they would be willing to exchange the part performance irrespective of what transpired subsequently or whether the divisions made are merely for the purpose of requiring periodic payments as the work progresses." 
Trapkus
, 140 Ill. App. 3d at 727, 489 N.E.2d at 346.

For its part, Kimco argues that the proper test for divisibility is given in 
Bonner v. Westbound Records, Inc.
, (76 Ill. App. 3d 736, 394 N.E.2d 1303 (1979), and 
Meredith v. Knapp
, 62 Ill. App. 2d 422, 211 N.E.2d 151 (1965).  The standard given by 
Bonner
 for determining whether a contract is divisible is taken from the following passage in 
Meredith
:

"A contract is not divisible where the parties assented to all the promises as a single whole so that there would have been no bargain whatsoever if any promise or set of promises were struck out. 6 Williston, Contracts §863 (3rd
 Ed 1962)."  
Meredith
, 62 Ill. App. 2d at 425, 211 N.E.2d at 152.

Under the standard set out in these cases, Kimco contends, the contract is clearly entire.  However, we do not think that the test proposed by Kimco applies.

In our view, while 
Bonner
 and 
Meredith
 are correct on their facts and the legal analysis therein is sound, the cases use the words "divisible" in a different sense than the sense relevant here.  As Williston notes:

"The use of the words 'entire' and 'indivisible' and 'divisible' has, however, not infrequently been confusing, for sometimes the words 'entire' or 'indivisible' are used as meaning that there is one contract as distinguished from several contracts, and divisible to mean more than one contract, and at other times the words are used as meaning more than this." 6 W. Jaeger,  Williston on Contracts §861 (3d ed. 1962).

It is clear that 
Bonner
 and 
Meredith
 are using the word "divisible" in the sense of "more than one" contract, since the test cited by 
Meredith
 is drawn from the following passage in Williston:

"§863. 
When Do Transactions Constitute Several Contracts?
 

The essential test to determine whether a number of promises constitute one contract or more than one is simple.  It can be nothing else than the answer to an inquiry whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out." 6 W. Jaeger,  Williston on Contracts §863 (3d ed. 1962).

Williston explains, however, that a "divisible contract," using that term in its usual sense, "differs in one respect only from other contracts--namely, that on performance on one side of each of its successive divisions, the other party becomes indebted for the agreed price of the division which is recoverable in spite of subsequent breach by the performing party." 6 W. Jaeger,  Williston on Contracts §861 (3d ed. 1962).
 
(on the importance of the distinction between these two meanings, see Restatement (Second) of Contracts §240, comment B (1981)).  

Illinois cases generally use "divisible" in the primary sense set out by Williston (see 12A Ill. L. & Prac. 
Contracts
 §244 (1983)), as do the sources that MC&L cites for the exception.  American Jurisprudence, second edition, employs this usual meaning of "divisibility."   17A Am. Jur. 2d 
Contracts
 §414 (1991).  And 
Howell
 does not use "divisible" to mean "more than one," for in its formulation of the exception it employs the singular: "
a
 continuing, divisible contract," and "future performance of 
the
 contract." (Emphasis added.) 
Howell
, 261 N.C. at 261, 134 S.E.2d at 385.

While the contract at issue here is clearly a single contract, in our view it is divisible.  This contract, as a contract for services, is analogous to a monthly employment contract.  Generally, monthly employment contracts fit neatly into the usual definition of a divisible contract.

"A contract for employment provides for the payment of a stated wage at the end of each day or each week or each month.  When the work for such a period is completed, the employer is usually held to be a debtor for the amount of the agreed wage installment, no more and no less; and the payment of that installment as agreed operates as a full discharge to that point.  Subsequent breaches by either party do not reopen the closed part of the employment transaction.  The subjects of exchange, money and labor, were apportioned into equivalent pairs."  3A A. Corbin on Contracts §697, at 295-96.

See also Restatement (Second) of Contracts §240 Comment D, Illustration 4 (1981); 
Robinson v. City of Geneseo
, 89 Ill. App. 2d 415, 418, 232 N.E.2d 464, 467 (1967) (
per
 
curiam
).

Looking at the contract in the instant case, it seems clear that performance is apportioned into roughly equivalent pairs: a month of janitorial services and a monthly payment.  The parties could have broken off the relationship at the end of any particular month with no obligations remaining.  The monthly payments are not merely periodic installments for a large project.  When each month of janitorial work was complete, Kimco was entitled to payment for that month, irrespective of any subsequent breach.  In our view, if the parties had considered it, they would have been willing to exchange part performance irrespective of what happened subsequently.  Accordingly, we hold that the contract was divisible in the relevant sense.  Thus, the exception set out in 
Howell
 applies.

III

Kimco also argues that, even if the court were to adopt the exception advocated by MC&L, it would not apply to MC&L because, based on the evidence considered by the trial court, Gries cannot prove that he notified Kimco’s representatives of the identity of MC&L’s principal at the meeting in February 1993.  Kimco correctly points out that an agent wishing to avoid personal liability has the burden to notify the third party of the full name of the principal and not merely supply information from which the third party could discover the identity of the principal.  
Vander Wagen Bros.
, 15 Ill. App. 3d at 553, 304 N.E.2d at 665.  For instance, it was not adequate disclosure when MC&L noted on a check dated April 14, 1993, that it was acting as agent for “the Fisher Building.”  MC&L would have had to notify Kimco that it was acting for “The Fisher Building Limited Partnership” in order to avoid liability on the contract.

Gries and Usa initially testified in their depositions that they could not remember whether Gries had notified Usa and Tarson of the exact name of the building owner.  In his deposition, Gries testified as follows:

"Mr. Turner:

Q. What conversation do you recall having with Mr. Usa about who owned what buildings?

A. The conversations with Mr. Usa were about the fact that Murdoch, Coll & Lillibridge was not an owner of any building.  We were a management company.

Q. Did you ever tell him what the name of the owner of the Fisher Building was?

A. I believe so, yes.

* * *

Q. Did you ever identify specifically what building was owned by what party?  What did you say about who owned the Fisher Building?

Mr. Lieberman: Asked and answered.  He just answered that.

The Witness: I just answered.

Mr. Turner:

Q. You said that it was owned by a partnership.  Those were your exact words?

A. I don’t know whether they were my exact words but that was the effect.

Q. To the best of your recollection what were the exact words that you used when you told him about the ownership of the Fisher Building?

A. That The Fisher Building was one of the buildings that was left over from the syndication days of the ‘80s that was owned by a group of limited partners.  Whether I ever mentioned ‘the Fisher Building Limited Partnership,’ 
per
 
se
, I don’t know.”

Mr. Usa testified at his deposition (at which Gries was present) as follows:

"Q. Did you have a meeting in February of '93 with anybody in connection with this account status?

A. I don’t know the date.  There was a meeting.  I had a meeting with Gary and Elliott Tarson, myself and I don’t – and there was someone else there at the time.

Q. What was the purpose of the meeting?

A. It was to see if we could get the account on track.

Q. And what were the problems with the account as of the date of that meeting?

A. It was late payments.

* * *

Q. Were you informed at that time as to the ownership of the building?

A. I don’t remember.  I don’t remember discussing it.

* * *

Q. And you recall no conversations about the ownership of the building?

A. No.

Q. You are absolutely certain that there was no mention at that meeting of who the owner was?

A. I said I don’t remember.

Q. One way or the other?

A. Yeah, I don’t remember.

Q. So you cannot swear that you were not informed about the true owner?

A. Yeah, I don’t remember one way or the other.”

Gries then filed a “supplemental affidavit” saying that after he reviewed his file he remembered that “[t]here was also considerable discussion about the financial circumstances of the owner, during which I informed Kimco’s representatives of the identity of the owner, mentioning specifically that the Fisher Building was owned by the Fisher Building Limited Partnership.”

Subsequently, Usa submitted an affidavit saying: “At no time was I ever informed as to the identity of the owner of the Fisher Building, or for whom Murdoch, Coll & Lillibridge might have been managing the Fisher Building.”

Kimco argues that Gries’ statement that he could not remember whether he gave the owner’s name constituted a binding admission and that he could not contradict it.  Kimco first cites 
Schmahl v. A.V.C. Enterprises, Inc.
, 148 Ill. App. 3d 324, 499 N.E.2d 517 (1986), as support for its contention.  
Schmahl
 was a contract case in which the question was whether a tender to satisfy a debt had taken place.  In his deposition the debtor had clearly stated that he had only about half the cash needed at the time of the purported tender.  But in order to be a legitimate tender under the Uniform Commercial Code, the party must be able and ready to pay in full (
Schmahl
, 148 Ill. App. 3d at 328, 499 N.E.2d at 575), and the court granted summary judgment for the creditor on this basis.  Then, in support of his motion to reconsider, the debtor submitted an affidavit averring that he did have access to the money necessary at the time of the alleged tender.  The court of appeals held that the debtor was barred from asserting that he had the ability to pay after affirmatively testifying in his deposition that he did not have the necessary funds. 
Schmahl
, 148 Ill. App. 3d at 331, 499 N.E.2d at 577.

One of the primary cases relied upon by the 
Schmahl
 court was 
Fountaine v. Hadlock
, 132 Ill. App. 2d 343, 270 N.E.2d 222 (1971), which Kimco also cites.  
Fountaine
 was a personal injury case in which liability turned on whether the plaintiff was acting as an employee when she was cleaning a staircase.  In her deposition the plaintiff unequivocally stated that she was cleaning the stairs on her own initiative rather than because the defendant had hired her to:

“Q. Did she tell you to [clean the stairs]?

A. She never asked it, no.

Q. Did she pay you anything for it?

A. No.

Q. And this was a gratuitous undertaking on your part?

A. That’s correct.” 
Fountaine
, 132 Ill. App. 2d at 346, 270 N.E.2d at 224.

Later, however, the plaintiff filed an affidavit saying that she had been paid for cleaning the stairs.  The trial court entered summary judgment for the defendant.  The court of appeals affirmed, holding that the subsequent affidavit could not create  genuine issues of material facts when those facts had been removed from contention by the plaintiff's “deliberate and unequivocal admissions under oath.” 
Fountaine
, 132 Ill. App. 2d at 347, 270 N.E.2d at 225.  The court noted that “[t]he questions were clear and the plaintiff’s answers were concise and unqualified.” 
Fountaine
, 132 Ill. App. 2d at 347, 270 N.E.2d at 225.  The purpose of such a rule is to discourage perjury.  
Meier v. Pocius
, 17 Ill. App. 2d 332, 335, 150 N.E.2d 215, 216 (1958).

In response, MC&L argues that Gries’ admission was not sufficiently deliberate and unequivocal to bring it under the rule of 
Schmahl
 and 
Fountaine
.  In support of its argument MC&L cites 
Young v. Pease
, 114 Ill. App. 3d 120, 448 N.E.2d 586 (1983).  
Young
 was a medical malpractice case.  At issue was whether the cause of action was barred by the statute of limitations.  The plaintiff was asked in his deposition when he had learned of his allegedly improper treatment.  At first the plaintiff said he did not remember, but then he said about seven years previously.  The court granted summary judgment to the defendant physician based on the statute of limitations.  The appeals court reversed, holding that “where a plaintiff has not made deliberate, repeated and unequivocal statements, it is possible, for purposes of a motion for summary judgment, to controvert the claimed admissions made in those statements.”  
Young
, 114 Ill. App. 3d at 124, 448 N.E.2d at 589.  

In our view, ordinarily, testimony of a party at a deposition may be controverted or explained.  
Trapkus
, 140 Ill. App. 3d at 722, 489 N.E.2d at 343.  Supreme Court Rule 201(j) states “[d]isclosure of any matter obtained by discovery is not conclusive, but may be contradicted by other evidence.”  134 Ill. 2d R. 201(j).  However, when a party’s testimony to a fact within his or her personal knowledge is sufficiently deliberate and unequivocal, it may be elevated to the status of a judicial admission and, as such, be settled for the purposes of litigation.  
Young
, 114 Ill. App. 3d at 123, 448 N.E.2d at 589; 
Trapkus
, 140 Ill. App. 3d at 723, 489 N.E.2d at 343.

In the instant case, Gries’ deposition testimony was not sufficiently deliberate and unequivocal to render it a judicial admission.  At first in the deposition Gries said he had given the owner’s name, and then he said he did not remember.  The case 
sub
 
judice
 is more analogous to 
Young
 than to 
Fountaine
 or 
Schmahl
.  Furthermore, it is not clear that Gries’ statement that he did not remember whether he had given the name of the owner was strictly contradicted by the statement in his affidavit that subsequently, after reviewing his file, he remembered that he had given the name.  In our view, Kimco did not do enough in deposing Gries to bind him to the position that he did not remember.  Kimco’s attorney did not ask Gries if there were materials that might refresh his recollection or whether his recollection had been exhausted.  The conflicting testimony as to whether the name of the owner had been revealed created issues of fact and credibility. 
Vander Wagen Bros.
, 15 Ill. App. 3d at 554, 304 N.E.2d at 666.  Accordingly, we hold that there was a genuine issue of fact concerning whether Gries had provided the name of the building’s owner.

There is some disagreement on the question of whether, as a rule, it is the burden of the third party or the agent to prove whether the third party knew the existence and identity of the principal at the time of contracting.  
Jensen v. Alaska Valuation Service, Inc.
, 688 P.2d 161, 163 (Alaska 1984) (burden on agent); but see 
A.S. Bell Co. v. Skeen
, 288 A.2d 596, 598 (Md. App. 1972) (burden on third party).  We do not address this question since MC&L has conceded for the purposes of this appeal that Kimco did not know the identity of the Fisher Building Limited Partnership at the time of contracting.

We are mindful that a trier of fact might be skeptical that Gries would suddenly remember a fact that was a crucial element of MC&L's defense.  But this goes to credibility and, as such, is a matter properly resolved at trial. 
Andersen v. Koss
, 173 Ill. App. 3d 872, 876, 527 N.E.2d 1098, 1100 (1988); 
Schuster v. East St. Louis Jockey Club, Inc.
, 37 Ill. App. 3d 483, 487, 345 N.E.2d 168, 172 (1976).  Gries' deposition, however, may be used to impeach him at trial.

For the foregoing reasons the judgment of the circuit court is reversed and remanded.

Reversed and remanded.

McBRIDE and McNULTY, JJ., concur.