United States Court of Appeals,

Fifth Circuit.

No. 96-10073.

The BONNEAU CO. and Pennsylvania Optical Company, Plaintiffs—Counter Defendants—Appellants,

v.

AG INDUSTRIES, INC., Defendant—Counter Claimant—Appellee.

June 27, 1997.

Appeal from the United States District Court for the Northern District of Texas.

Before JOLLY, JONES and PARKER, Circuit Judges.

PER CURIAM:

The Appellants, The Bonneau Co. and Pennsylvania Optical Company (hereafter collectively referred to as "Bonneau"), appeal the district court's grant of summary judgment for AG Industries, Inc. ("AGI"). AGI sought summary judgment on Bonneau's claim of breach of warranty against infringement under Texas Business & Commerce Code § 2.312(c), and on AGI's counterclaim of breach of contract. Finding no error, we affirm.

*FACTUAL AND PROCEDURAL BACKGROUND*

Bonneau is a manufacturer and distributor of non-prescription reading glasses having varying frame designs which are sold from a point-of-purchase display stand via a "hang-tag" system. The hang-tag enables a prospective purchaser to observe, test, and purchase a wide array of the reading glasses without interference

1

from the hang-tag itself.  The hang-tag is hung from a cantilever support (two metal support arms) that projects outward from the display stand on which the hang-tag is suspended.  This was known as the Bonneau "Slide-Hook" system.

AGI is a wholly-owned subsidiary of American Greetings Corporation and manufactures custom point-of-purchase display stands and other products.  In December 1992, AGI and Bonneau entered into a Supply Agreement whereby AGI agreed to manufacture and sell display stands to Bonneau.  AGI, at the direction of Bonneau, manufactured the display stand, hang-tag, and cantilever arms which comprise the Bonneau Slide-Hook display system.  Subsequently, Bonneau was named a defendant in several lawsuits brought in federal court in California and Florida by Magnavision, Inc. (formerly known as Al-Site) ("Magnavision") alleging patent infringement.  These infringement suits concerned the hang-tag system used by Bonneau.

In December 1993, Bonneau filed suit against AGI in state court, which was removed to the court below.  Bonneau sued under Texas Business & Commerce Code § 2.312(c) for breach of warranty, alleging that AGI designed a retail display system for Bonneau and that AGI must warrant that the goods delivered were free of any rightful claim of infringement.  Bonneau sought as damages the cost of defending the infringement suits and attorneys' fees.  AGI asserted a counterclaim against Bonneau for breach of contract arising from Bonneau's failure to make payment for the display

2

stands, work-in-progress, and raw materials for which it contracted. Thus, the crux of the dispute in this case arises from the design of the Slide-Hook system.

AGI sought summary judgment on Bonneau's breach of warranty claim and also on its breach of contract claim, which the district court granted. The district court granted summary judgment on Bonneau's breach of warranty claim on the grounds that the parties "otherwise agreed" to a different warranty provision and that Bonneau furnished the specification for the hang-tag display system to AGI. Bonneau timely appealed to this Court. We now review the lower court's decision.

*DISCUSSION*

This Court reviews the granting of summary judgment *de novo,* applying the same legal standard used by the district court in the first instance. *Texas Medical Ass'n. v. Aetna Life Ins. Co.,* 80 F.3d 153, 156 (5th Cir.1996). Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting FED.R.CIV.P. 56(c)); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

It is well-established that this Court reviews *de novo*

3

questions of law raised in summary judgment appeals.  *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1303 (5th Cir.1995).  More specifically, we review a district court's determination of state law *de novo.  Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).  Because we sit in diversity, we must apply Texas law, mindful that in making an *Erie*[1] guess, "[w]e are emphatically not permitted to do merely what we think best;  we must do that which we think the [Texas] Supreme Court would deem best." *Jackson v. Johns-Manville Sales Corp.,* 781 F.2d 394, 397 (5th Cir.1986).

Bonneau's complaint alleges a cause of action pursuant to Texas Business & Commerce Code § 2.312(c).  Section 2.312(c) states:

> Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.

TEX. BUS. & COM.CODE § 2.312(c) (1994).

At the outset, this Court's research discloses very little case law regarding this specific section.  As noted by Professors White and Summers, "this section has not been heavily litigated" in the courts.  JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE §

---

[1]*Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

9-12, at 538 (4th ed.1995). Our main focus concerns the second clause of § 2.312(c), the hold harmless provision, where the buyer furnishes specifications to the seller. However, under the particular facts of this case, we need not delve into a dissection of § 2.312(c) in order to answer the questions before us.

We begin our review with the district court's grant of summary judgment on Bonneau's breach of warranty claim on the grounds that the parties "otherwise agreed" to a different warranty provision than that stated in § 2.312(c). The district court relied on the language in the price quotations submitted by AGI to Bonneau which stated that "Purchaser assumes liability for patent and copyright infringement when goods are made to Purchaser's specifications." In addition, the court noted that the purchase orders sent by Bonneau to AGI did not dispute or controvert the liability provision in the price quotations. Thus, the district court held that AGI's price quotations encompassing the patent liability provision constituted an offer which was accepted by Bonneau's purchase orders. Therefore, because the parties "otherwise agreed" to a different patent liability provision, § 2.312(c) was inapplicable to this cause of action. We disagree.

In the instant case, the limitation language contained in the price quotations on which the district court relied does not constitute an "otherwise" agreement that would alter the liability provision of the statute. The limitation provision in the price quotations track the second clause of § 2.312(c), i.e., "a buyer

5

who furnishes specifications to the seller must hold the seller harmless against any such claim...."  We cannot ascertain any distinction between the statute's limitation language and that of the price quotations' that would rise to the level of the parties having "otherwise agreed."  Consequently, we concluded that the mere recitation of the statute is insufficient to alter the parties' relationship with respect to limitation of liability for patent infringement.  Although the North Carolina Court of Appeals in *MAS Corp. v. Thompson* 62 N.C.App. 31, 302 S.E.2d 271, 275 (1983) adopted a stricter view of "otherwise agreed" when it concluded that "the statute only applies if nothing was said as to liability," i.e., there was no other agreement, we do not believe that the Texas Supreme Court would hold the statute requires such a constricted reading.  Therefore, under the facts of this particular case, we hold that there is no "otherwise agreed" language that changed the impact of the parties relationship under the statute, and the district court erred in holding that the parties "otherwise agreed."

We now turn our focus to the district court's grant of AGI's alternative submission in its motion for summary judgment that Bonneau supplied the design specification for the Slide-Hook display system (which was the subject of Magnavision's patent infringement suit) to AGI and, therefore, under § 2.312(c) Bonneau must hold AGI harmless against the patent infringement actions.

6

Bonneau asserts that it merely supplied a "sketch" of the hang-tag to AGI, and that AGI designed and manufactured the Slide-Hook display system according to AGI's own "engineer like" specifications. Thus, Bonneau contends that it did not assume liability for patent infringement either by agreement or under § 2.312(c). AGI counters that Bonneau, and not AGI, designed the display system that was the subject of the patent infringement suits and, therefore, there was no breach of warranty under § 2.312(c). We reject Bonneau's arguments.

We recognize that "specification" is not defined in § 2.312 or in Article 2 of the Texas Business & Commerce Code. However, based on our review of the record, we conclude that the hang-tag design furnished by Bonneau to AGI constitutes a specification under § 2.312(c) which formed the basis for the infringement actions for which Bonneau sought indemnification. The record discloses that the hang-tag design (which was central to the display system) was created by Alice Myer, Bonneau's advertising and display manager, and other Bonneau executives in late January 1991. Myer's hang-tag design delineates the use and shape of a "T-Hook" and two cantilever support arms projecting from the display stand on which the hang-tag is suspended. There is no dispute that Myer did not receive any assistance from AGI in the design of the hang-tag. Thus, Myer's hang-tag design was solely Bonneau's design. The record also discloses that Myer's design of the hang-tag ultimately became the Slide-Hook for Bonneau's display system. The hang-tag

7

design specifications which Bonneau furnished to AGI were central to the Slide-Hook display system. Accordingly, we concluded that Myer's design contains sufficient specificity for a competent manufacturer to construct the product, and thus, constitutes a "specification" pursuant to § 2.312(c). Our conclusion is supported by the fact that the specifications that Bonneau furnished to AGI were the only means for AGI to manufacture the Slide-Hook display system within the parameters set by Bonneau. Stated another way, without the hang-tag specification Bonneau furnished to AGI, Bonneau's Slide-Hook system would be nonexistent. Therefore, we find Bonneau's argument that AGI designed and manufactured the Slide-Hook according to AGI's own specifications unsupported by evidence sufficient to raise a genuine issue of material fact.

Furthermore, Myer admitted that she designed the hang-tag in such a manner in order to avoid infringing Magnavision's patent. Subsequently, Myer's hang-tag design was sent to AGI to implement Bonneau's new Slide-Hook system. Myer's testimony further reflects that the previous cantilever arm would not work with Myer's new hang-tag design; thus, Myer designed two cantilever arms in order to make Bonneau's new Slide-Hook design functional. Myer was also responsible for executing the marketing strategy for Bonneau's new Slide-Hook display system. These actions by Bonneau's personnel support the conclusion that Bonneau created the design specifications for the hang-tag Slide-Hook and furnished those

8

specifications to AGI in order for AGI to create a custom hang-tag display stand. Moreover, as Comment 3 to § 2.312(c) recognizes "when the buyer orders goods to be assembled, prepared or manufactured [based] on his own specifications ... liability will run from buyer to seller." TEX. BUS. & COM.CODE § 2.312 cmt. 3 (1994). Because the statutory language is clear, judicial inquiry into the statute's plain meaning is unnecessary. *In re Greenway,* 71 F.3d 1177, 1179 (5th Cir.1996). Thus, it would be erroneous for this Court to conclude that Bonneau did not furnish the specifications for the Slide-Hook because such a conclusion would nullify the import of § 2.312(c), and allow buyers to avoid liability by simply employing another party to build the specific product and subsequently assert that because the other party constructed the product, the buyer must always be indemnified. We do not envision the Texas Supreme Court would so hold and, likewise, we decline to do so.

Finally, we note that the Federal Circuit in interpreting the Pennsylvania counterpart to § 2.312(c) of the Texas U.C.C., concluded that "[o]n its face [§ 2.312(c) ] shifts all costs, including attorney fees, to the buyer who furnishes a seller with specifications that leads to a "rightful claim' of infringement." *Cover v. Hydramatic Packing Co., Inc.* 83 F.3d 1390, 1394 (Fed.Cir.1996). We agree with this reading of the statute. Thus, because we have concluded that Bonneau furnished the specification

to AGI for the Bonneau Slide-Hook display system, Bonneau's defense costs associated with the patent infringement actions in California and Florida must be borne by Bonneau.  Therefore, we affirm the district court's grant of summary judgment for AGI on this point.

Finally, we address Bonneau's appeal of the district court's grant of summary judgment for AGI on its counterclaim for breach of contract based upon an account stated under Rule 56(a).  The district court examined the Supply Agreement, Bonneau's purchase orders, and the unpaid invoices and determined that AGI had established a stated account and that it was up to Bonneau to rebut the account.  Bonneau failed to do so.  Thus, the district court concluded that because Bonneau failed to offer any basis why it should not be responsible for the sums due and, more importantly, because there was no breach of warranty by AGI, no genuine issue of material fact existed on AGI's counterclaim and AGI was entitled to summary judgment.

Bonneau asserts that there is no evidence of an admission by it that the amounts represented by the invoices were due and owing *without* any lawful claim or offset for breach of warranty against infringement.  This argument however obscures the real legal issue before us.  Further, Bonneau argues that if it is entitled to an offset by prevailing on its warranty infringement claim, a genuine issue of material fact exists as to the validity, accuracy, and amount due and owing to AGI under the Supply Agreement.  Thus, we

10

find that Bonneau's offset claim is solely dependent on its claim for breach of warranty against patent infringement.

As we have concluded above, there was no breach of the warranty against infringement under § 2.312(c) by AGI. Therefore, Bonneau's claim of offset must fail. Moreover, Bonneau has presented no other argument to this Court which discloses error by the district court, nor does the record before us disclose any error. Accordingly, based on the record before this Court, we conclude that no genuine issue of material fact exists and that the district court's ruling on AGI's counterclaim must be affirmed.

*CONCLUSION*

Based on the foregoing discussion, we affirm the district court's grant of summary judgment for AGI on Bonneau's breach of warranty claim under Fed.R.Civ.P. 56(b) and on AGI's counter-claim for breach of contract under Fed.R.Civ.P. 56(a).

AFFIRMED.