JOHN SCHMAHL, Plaintiff-Appellee, v. A.V.C. ENTERPRISES, INC., *et al.*, Defendants-Appellants.

First District (2nd Division) No. 85—3344

Opinion filed October 7, 1986.

Altheimer & Gray, of Chicago (Arnold Kanter and Jacqueline W. Vlaming, of counsel), for appellants.

Baum, Glick & Wertheimer, of Chicago (Daniel S. Mathless, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

The circuit court granted plaintiff-appellee, John Schmahl, summary judgment in his action to collect on an overdue promissory note executed by defendant-appellant Anthony Caccomo and his company, A.V.C. Enterprises, Inc. The court did so after appellant had admitted liability on that debt, and after appellee had dropped his initial demand for compound interest rather than simple interest on the debt. In ruling, the court rejected appellant's claim that summary disposition was premature because of questions as to the adequacy of appellant's tender of payment and the related question of whether that tender tolled the accrual of interest. Those issues are raised anew in this forum. We affirm.

On February 15, 1980, appellant and his company executed the promissory note at issue herein with appellee, in the face amount of $25,000. Under the terms of that note, the interest rate was fixed at 48% until the maturity date of the note (December 1, 1980), and at 60% thereafter, both rates *per annum*. Appellant did not make any payment in satisfaction of the debt upon maturity of the note, however.

According to appellant, no demand for payment was made until

mid-1983, at which time appellee made such a request of appellant. Prior to that date, appellee had merely inquired as to the "status" of the deal. In mid-1983 appellant proposed a settlement of the outstanding obligation, asking that appellee accept "cash and/or property" in satisfaction of the debt. In return, appellant expected that the note be tendered back to him marked "paid in full." Appellant, at the time of this proposal, acknowledged that he did not have sufficient funds available to retire the debt completely in cash. Rather, according to appellant's deposition, he had only about half the necessary funds available in liquid assets. The remainder would be, in appellant's words, in "illiquid assets, real estate *** or sums due us by certain subsequent dates."

Appellant asserted that this negotiation never came to fruition owing to a dispute between the parties as to the total amount due on the note. The essence of that dispute was the method of interest calculation. Appellant was claiming that interest on the debt was to be determined on a simple-intercst basis, while appellee was of the view that the note contemplated the compounding of interest. At the time of the settlement proposal, appellant's calculations would have resulted in a total indebtedness of between $80,000 and $85,000. Appellee's figures placed the accrued interest alone in that range. As a result of this dispute, appellant never paid appellee any money on the debt, feeling:

> "[B]ecause we were so far apart in the amounts that were due at that point, [appellant did not make any payment. Appellee] would have taken the funds and applied it to the amount that was due without giving us proper credit in the amount that I felt was due.
>
> ***
>
> [And] that's just prudent business on my part and I know that to be true to the extent that if I don't have an agreed-upon settlement, I will not tender a payment for any part unless there is an acknowledged agreed amount between both parties as to how much that is due."

Appellee refused to accept any payment in cash and/or property, and no money changed hands in satisfaction of the outstanding debt or any part thereof.

On October 4, 1984, appellee filed suit to collect on the note. As previously indicated, appellant admitted liability in his answer. The circuit court, in its order of March 22, 1985, stated that the only issue remaining unresolved in the case was the question of the calculation of the amount of damages.

Appellee thereafter moved for summary judgment. In his motion, appellee noted appellant's admission of liability. While not retreating from his claim for compound interest, appellee stated that, based on appellant's concession of liability, he was owed simple-interest damages at a minimum, and requested summary judgment in that amount.

Appellant, in his answer to the summary judgment motion, asserted that there were still genuine issues of material fact extant sufficient to preclude summary judgment, namely, the question of whether appellant made, or was excused from making, a tender of payment in mid-1983 and, further, whether the mid-1983 negotiations tolled the accrual of interest on the debt. The circuit court rejected those claims, and in its order of August 19, 1985, granted appellee summary judgment in the amount of $132,186 plus costs, an amount representing the principle sum plus simple interest through the date of judgment. Appellee thereafter dropped his demand for compound interest on the debt.

On September 12, 1985, appellant filed a motion requesting reconsideration of the earlier summary judgment order, which motion was supplemented by two exhibits. The first was a document that appellant claimed was "recently found." The second was appellant's affidavit, in which he asserted that the document had triggered a recollection of a second mid-1983 proposal to settle the debt, this time for an all-cash payment of $85,000. The circuit court denied reconsideration of its ruling, and this appeal followed.

■ The office of summary judgment is well recognized. It is a "drastic remedy" (*Lesser v. Village of Mundelein* (1975), 36 Ill. App. 3d 433, 437, 344 N.E.2d 29) which should be sparingly employed (*Ruby v. Wayman* (1968), 99 Ill. App. 2d 146, 240 N.E.2d 699). It is not a remedy designed to decide cases presenting factual issues, but rather is intended to sift out those cases which involve strictly legal matters ripe for summary disposition by the circuit court. (See *Glen Ellyn Savings & Loan Association v. State Bank of Geneva* (1978), 65 Ill. App. 3d 916, 382 N.E.2d 1267.) The burden is placed squarely on the party seeking the benefit of a summary judgment order to demonstrate that his entitlement to that remedy is free from doubt. (*Bultman v. Bishop* (1983), 120 Ill. App. 3d 138, 457 N.E.2d 994.) In deciding whether a factual question precluding summary judgment exists, courts are admonished to construe the evidence strictly against the party moving for summary judgment and liberally in favor of the motion's opponent. (*Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 392 N.E.2d 675.) Applying these standards, we cannot

agree with appellant's assertion that summary judgment was premature.

 Appellant challenges the summary judgment order on two bases: first, appellant asserts that there was a genuine issue of material fact unresolved as to whether appellant made a valid tender of payment, or was excused from making such tender by appellee's actions, in mid-1983; second, appellant asserts that its "tender" tolled the accrual of interest at that time, and that the circuit court accordingly erred in fixing the debt at $132,186.

Resolution of these questions requires reference to the Uniform Commercial Code (Ill. Rev. Stat. 1985, ch. 26, par. 1—101 *et seq.*) (hereinafter the UCC). The UCC provides, *inter alia*:

"Sec. 3—604. Tender of payment.

(1) Any party making tender of full payment to a holder when or after it is due is discharged to the extent of all subsequent liability for interest, costs and attorney's fees.

(2) The holder's refusal of such tender wholly discharges any party who has a right of recourse against the party making the tender.

(3) Where the maker or acceptor of an instrument payable otherwise than on demand is able and ready to pay at every place of payment specified in the instrument when it is due, it is equivalent to tender." (Ill. Rev. Stat. 1985, ch. 26, par. 3—604.)

Succinctly, appellant claims that he falls under this provision in that he was "able and ready" to make "full payment" in mid-1983, the "equivalent of tender," but was prevented from doing so by appellee's rigid adherence to his claim for compound interest. The above provision, in appellant's view, raises the aforementioned factual questions. Not surprisingly, appellee believes that appellant was outside the ambit of the above-quoted provisions of the UCC.

We believe that the dispositive consideration in this case is the question of appellant's ability to satisfy the outstanding debt (assuming the calculation of interest on a simple rather than compound basis) when the settlement negotiations were alleged to have transpired in mid-1983. We accept appellant's calculation of the debt under such circumstances to amount to a total between $80,000 and $85,000.

Our conclusion that appellant's ability to pay is the decisive criterion is grounded upon several factors. First, we believe that the UCC was designed to promote commerce and not to place a premium on artifice in commercial transactions. (See Ill. Rev. Stat. 1985, ch. 26, par. 1—102.) In our judgment, if appellant lacked the ability to pay off

the debt in mid-1983, then to allow an offer to pay in full at that time to operate as a valid tender would be to promote such artifice. Second, we believe that the nature of the tender requirement itself mandates such a result.

> "Williston defines tender as 'an offer to perform a condition or obligation *coupled with the present ability of immediate performance,* so that were it not for the refusal of cooperation by the party to whom tender is made, the condition or obligation would be *immediately* satisfied.' " (Emphasis added.) *Martindell v. Lake Shore National Bank* (1957), 15 Ill. App. 2d 217, 225, 145 N.E.2d 784 (quoting from 6 *Williston on Contracts* sec. 1808), *rev'd on other grounds* (1958), 15 Ill. 2d 272, 154 N.E.2d 683.

This definition of tender is consistent with that contained in the UCC (Ill. Rev. Stat. 1985, ch. 26, par. 3—604). There, as noted, the UCC speaks of "full payment" and the ability and readiness of the obligor to "pay at every place of payment specified in the instrument."

The crux of appellant's argument is that he made the equivalent of tender under the UCC in his mid-1983 proposal, and that had appellee abandoned his rigid adherence to the compound-interest calculation at that time the debt would have been retired then, thus obviating the instant proceedings. In appellant's view, this rigidity on appellee's part frustrated settlement and excused tender under the UCC. There is some support to be found for appellant's position.

> "Where a creditor, in advance of an offer to pay, or in response to such offer, informs the party under obligation to pay, that he will not accept the amount actually due, in discharge of the indebtedness, the party under obligation to pay is relieved of the duty of tendering the amount actually due." (*Needy v. Sparks* (1979), 74 Ill. App. 3d 914, 918, 393 N.E.2d 1252, quoting *Gorham v. Farson* (1887), 119 Ill. 425, 442, 10 N.E. 1.)

We cannot accept appellant's analysis, however. While appellee's conduct in refusing to accept payment might arguably raise factual questions sufficient to preclude summary judgment if the tender was adequate, it cannot be permitted to excuse an inadequate tender of the amount owing from a party manifestly lacking the ability to satisfy the debt. The exception to the tender requirement contained in the UCC's section 3—604 was not, in our judgment, designed to create an escape hatch for a party unable to pay off a debt, or to grant a license to defeat an obligation through a sham tender.

Here, when the circuit court granted summary judgment, the following facts were before the court. Appellant had admitted his liabil-

ity on the note. Appellant had been deposed, and his deposition had been presented to the court. In that deposition, appellant stated that he did not have the money necessary to pay off the debt even assuming his calculation of the debt was accurate. Rather, appellant stated that he had only about half the money needed, and the remainder would be in illiquid assets. This proposal was at substantial variance with appellant's obligation under the note.

> "In the absence of an agreement otherwise providing, or the consent of the creditor to receive some other medium, payment may be made only in money. (70 C.J.S., *Payment*, sec. 13; 40 Am. Jur., *Payment*, sec. 40.) However, by agreement either expressed or implied, or when the creditor so consents, payment may be made by furnishing, transferring or delivering anything of value. 70 C.J.S., *Payment*, sec. 22; 40 Am. Jur., *Payment*, secs. 40—54." (*Consolidated Freightways v. Industrial Com.* (1972), 48 Ill. 2d 221, 224, 269 N.E.2d 291.)

The instant promissory note explicitly stated that appellant:

> "[P]romises to pay to THE ORDER OF THE BEARER John Schmahl the principle sum of—Twenty Five Thousand and no/100 DOLLARS on December 1, 1980, with interest thereon *** ."

Nowhere in the note is there any language permitting, or even suggesting, payment other than in dollars. Clearly, according to appellant's deposition testimony, he lacked the funds necessary to retire the debt in full for cash when the settlement negotiations occurred. His proposal therefore cannot be deemed the "equivalent of tender" under the UCC since it did not represent "full payment" in accord with the obligation under the note, nor was appellant able and ready "to pay at every place of payment specified." Appellee was well within his rights in refusing to compromise his claim by accepting payment other than in dollars. Since appellant was not presently able to pay the debt in mid-1983, he cannot claim the protections enumerated in the UCC for refusal of tender. In order to avail himself of the protections contained therein, it is only reasonable that appellant comply with the prerequisites for that protection.

In his effort to undermine the circuit court's conclusion (and our own) that there was no tender of the full obligation or its equivalent, appellant places great reliance on the allegations incorporated in his motion for reconsideration, wherein he belatedly recalled an all-cash offer to settle the debt. We find this reliance to be misplaced.

By the statements elicited in his deposition, appellant removed the question of his ability to fund an all-cash settlement from consider-

ation. Key was the following colloquy:

"Q. At the time that you had this discussion with Mr. Schmahl in mid 1983 or a series of discussions, did you have a liquid $85,000 available to pay him if you wanted to pay him? *** Cash in hand, in a bank, in a CD. Liquid. *** Did you have liquid assets available of $85,000 that were not pledged to somebody else or secured to somebody else?

A. Probably not the total amount, no, not the entire $85,000.

Q. Do you recall how much of it you had at that time?

A. Approximately half in cash."

Clearly manifested in the above-quoted statements is appellant's abject failure to demonstrate a present ability to pay off the debt.

In his affidavit supplementing the motion for reconsideration, however, appellant stated that he had only recently recalled a second proposal: "I then asked [appellee] if he would take $85,000 cash in satisfaction of the note. He flatly refused my offer." This assertion does not square with appellant's statements in his deposition. In essence, appellant was trying to inject an ability to make adequate tender into the case, which ability he had previously denied. We cannot accept such a procedure.

■ Appellant, by his deposition, removed this question from consideration.

"In *Fountaine v. Hadlock*, 132 Ill. App. 2d 343, 270 N.E.2d 222, the plaintiff in a deposition had sworn to certain facts. She later directly contradicted these statements in an affidavit introduced to traverse the motion for summary judgment. The court held that the counteraffidavit did not place in issue facts previously removed from contention by deliberate, unequivocal admissions under oath.

This case is an expression of judicial policy, the purpose of which is to eliminate the temptation to commit perjury." (*Smith v. Ashley* (1975), 29 Ill. App. 3d 932, 935, 332 N.E.2d 32.)

Otherwise expressed, a party may not create a genuine issue of material fact by taking contradictory positions, nor may he remove a factual question from consideration just to raise it anew when convenient. Similarly herein, by stating that he lacked the funds necessary to satisfy the debt in mid-1983, appellant was barred from later asserting that he had that ability. It is absurd to posit, as appellant does herein, that he could have borrowed the necessary funds against his holdings, when he clearly stated that he did not have the "liquidity" in his deposition.

In sum, we can only agree with the circuit court that appellant did not have the funds necessary to tender, and as such did not meet the prerequisites to fall under section 3—604 of the UCC or toll the accrual of interest. For the above-stated reasons, the judgment of the circuit court is affirmed.

Affirmed.

STAMOS and HARTMAN, JJ., concur.