2016 IL App (1st) 151814

No. 1-15-1814

Opinion filed August 2, 2016

Second Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| CONNIE FOLEY, CALVIN DREW, and RAYMOND HAYES, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | No. 13 CH 13589 |
| S.A. "TONY" GODINEZ, as Director of Corrections, | ) ) ) ) | The Honorable LeRoy Martin, Judge, presiding. |
| Defendant-Appellee. | ) | |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Neville concurred in the judgment and opinion.

**OPINION**

¶ 1    The Director of the Illinois Department of Corrections refused to certify that three former Corrections officers satisfied a set of requirements necessary for them to obtain a concealed carry permit under federal law. The officers then filed a complaint for *mandamus* relief to compel the Director to certify. The parties filed cross-motions for summary judgment regarding plaintiffs' right to the requested relief and whether the Director had a nondiscretionary, ministerial duty to certify. The trial court granted the Director's summary judgment motion and denied plaintiffs'

motion. The court found that plaintiffs were not entitled to *mandamus* relief because certifying their status was not a purely ministerial act and required the Director to exercise discretion.

¶ 2    We affirm. Under the Law Enforcement Officers Safety Act (18 U.S.C. § 926A through C (2006)), the Director has authority to decide whether an applicant meets the statutory requirements to be certified as a qualified retired law enforcement officer. Thus, the act of certification was a discretionary, nonministerial act, and *mandamus* relief—ordering the Director to certify and submit the form—was inappropriate.

¶ 3                                 BACKGROUND

¶ 4                       Law Enforcement Officers Safety Act

¶ 5    The Law Enforcement Officers Safety Act of 2004 (LEOSA) (18 U.S.C. § 926A through C (2006)) permits qualified active or retired "law enforcement officers" who possess the required identification to lawfully carry a concealed firearm across state lines without being subject to prosecution under state and local laws. Section 926(C), which applies to retired officers, provides that "[n]otwithstanding any other provision" of state law, a "qualified retired law enforcement officer" who has the requisite identification may carry a concealed firearm in any state, subject to state law restrictions on carrying concealed weapons in certain places. 18 U.S.C. § 926C(a) (2006).

¶ 6    To be deemed a "qualified retired law enforcement officer" under LEOSA, a person must meet these seven requirements: (i) separation in good standing from service with a public agency as a law enforcement officer; (ii) before separation, having been authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and having statutory powers of arrest; (iii) before separation, having served as a law enforcement officer for an aggregate of 10 or more years or

separated from service after completing any applicable probationary period due to a service-connected disability; (iv) during the most recent 12-month period, at his or her expense, meeting the standards for qualification in firearms training for active law enforcement officers; (v) not officially having been found unqualified for reasons relating to mental health or not having entered into an agreement with the agency acknowledging that he or she is not qualified for reasons relating to mental health; (vi) not being under the influence of alcohol or another intoxicating or hallucinatory drug or substance; and (vii) not being prohibited by federal law from receiving a firearm. 18 U.S.C. § 926C(c) (2006).

¶ 7          As noted, under LEOSA, a qualified retired law enforcement officer must have proper identification before carrying a concealed weapon. The identification requirement can be satisfied in one of two ways. An individual can obtain a photo ID from his or her former agency stating that he or she was previously employed as a police officer or law enforcement officer and, within the last year, has met the active duty standards for qualification in firearms training to carry a firearm of the same type as the concealed firearm. 18 U.S.C. § 926C(d)(1) (2006). Or the individual can obtain two documents—a photo ID from his or her former agency stating that he or she was employed as a police officer or law enforcement officer (18 U.S.C. § 926C(d)(2)(A) (2006)) and a certification from the state or a certified firearms instructor stating that within the last year, he or she has met either the state's active-duty standards for qualification in firearms training to carry a firearm of the same type as the concealed firearm or, if the state does not have standards, then standards set by any law enforcement agency within that state. 18 U.S.C. § 926C(d)(2)(B) (2006).

¶ 8                    Illinois Retired Officer Concealed Carry Program

¶ 9          In Illinois, the Law Enforcement Training and Standards Board (Board) administers a program called the Illinois Retired Officer Concealed Carry program (IROCC) through which qualified retired law enforcement officers may obtain concealed carry permits. 20 Ill. Adm. Code 1720.200 through 1720.900. The Board develops and processes applications and certifies retired law enforcement officers qualified under LEOSA. 50 ILCS 705/10, 710/3 (West 2012).

¶ 10         Before an applicant will be prequalified for firearm certification, he or she must provide the Board with a complete application, which consists of three forms. The applicant completes two of them—the application form and an affidavit attesting to the applicant's law enforcement service and qualifications for carrying a firearm. The third form, the "Retirement/Separation Verification" form, referred to as "Form 3," must be completed by an authorized representative of the state agency where the applicant previously worked. Form 3 requires the agency representative to certify, under penalty of perjury, that the applicant was regularly employed as a "Law Enforcement Officer" as defined by LEOSA for a specified number of years or was separated from service with the agency due to a service-connected disability. An applicant's failure to provide information necessary to complete the application precludes any further processing and results in denial of the application. 20 Ill. Adm. Code 1720.250(d), adopted at 30 Ill. Reg. 7925 (eff. Apr. 11, 2006). An applicant who submits a completed application is prequalified for the firearms testing and, on successfully completing the firearm certification, receives a card indicating IROCC certification and compliance with state and federal laws.

¶ 11         Plaintiffs, Connie Foley, Calvin Drew, and Raymond Hayes, are former parole agents for the Department of Corrections who retired in good standing between 2001 and 2012. (Eight former Department employees were initially named as plaintiffs, but only Foley, Drew, and

Hayes are now parties.) Hayes worked for the Department for 11 years, and Foley and Drew were Department employees for more than 30 years. After their retirement, each plaintiff applied for a concealed carry permit through the IROCC program. The Board advised plaintiffs that their applications would be processed only after receiving Form 3, signed by the Department's administrator certifying that each applicant met its requirements. Plaintiffs asked the Department to submit Form 3 to the Board, certifying under penalty of perjury that plaintiffs met the requirements to be certified as qualified retirement law enforcement officers. The Department refused and advised plaintiffs it would not process, verify, or certify the information on Form 3.

¶ 12       Plaintiffs filed a one-count complaint for a writ of *mandamus*, asking the trial court to order the Director to certify Form 3 and submit it to the Board. Plaintiffs alleged they had a right to *mandamus* relief because they met all of the requirements to be deemed "qualified retirement law enforcement officers" under LEOSA. They retired from the Department in good standing after more than 10 years of service and asserted that, as parole agents, they had engaged in or supervised the prevention of crimes and the incarceration of people for violating state criminal laws and had statutory powers of arrest. Plaintiffs also asserted that under section 3 of the Peace Officer and Probation Officer Firearm Training Act (50 ILCS 710/3 (West 2012)), which requires agencies to "cooperate with the Board by furnishing relevant information which the Board may require," the Director has a nondiscretionary duty to provide the requested information to the Board.

¶ 13       The Director filed a motion to dismiss under section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)), asserting that plaintiffs failed to state a claim for which relief may be granted because the Department is not obligated to certify Form 3 and

plaintiffs were not law enforcement officers under LEOSA. The trial court denied the motion to dismiss.

¶ 14    The parties then filed cross-motions for summary judgment. The Director attached to his motion a declaration from Brad Curry, the Department's chief public safety officer. Curry stated that since 2003, the Department has declined to certify Form 3 to the Board because (1) Department employees had "limited statutory powers of arrest" that did not make them qualified retired law enforcement officers for purposes of IROCC, (2) the restrictions pertaining to off-duty firearm use coupled with limited powers of arrest do not warrant the same level of training that is provided to qualified retired law enforcement officers under IROCC, and (3) certifying Department personnel as qualified law enforcement officers for purposes of IROCC raises serious public policy concerns because the Department lacks knowledge as to whether its personnel receive the same level of firearms and other training as local law enforcement officers established by the Board. Further, the Director asserted that he did not have sufficient knowledge to certify that the plaintiffs were not under the influence of alcohol or drugs or are not prohibited by federal law from possessing a firearm, as required by sections 926C(c)(6), (7) of LEOSA. 18 U.S.C. § 926C(c)(6), (7) (2006)).

¶ 15    In their motion for summary judgment, plaintiffs again argued that they met the statutory definition of "qualified retired law enforcement officers" under LEOSA, because they worked for the Department for at least 10 years, retired in good standing, were not unqualified for mental health reasons, and were authorized to "engage in or supervise the prevention *** or the incarceration of any person for, any violation of law, and had statutory powers of arrest" under section 926C(c)(2) of LEOSA. 18 U.S.C. 926C(c)(2) (2006).

¶ 16     After argument, the trial court granted the Director's motion for summary judgment and denied the plaintiffs' motion. The court found that *mandamus* relief could not be granted because the plaintiffs were asking the court to order the Director to certify that they were qualified retired law enforcement officers, which "requires some discretion on his part and is not a purely ministerial act." The court stated that "it would appear to me that the federal act contemplates that former corrections officers would be eligible" but noted that Congress has "[ceded] certain powers to the state in determining whether or not an individual meets that state's definition of a law enforcement officer." Plaintiffs appealed.

¶ 17                                ANALYSIS

¶ 18     Plaintiffs contend the trial court erred in denying their motion for summary judgment and granting defendant's summary judgment motion. Plaintiffs maintain that they are qualified retired law enforcement officers under LEOSA, that certifying Form 3 was a purely ministerial act requiring no exercise of discretion by the Director, and that they are thus entitled to *mandamus* relief. Plaintiffs also contend the Peace Officer and Probation Officer Firearm Training Act (50 ILCS 710/3 (West 2012) requires the Department to cooperate with the Board by furnishing relevant information and thus, the Director had a mandatory duty to certify Form 3 on their behalf. Alternatively, plaintiffs argue that if *mandamus* relief is not warranted, the case should be remanded and they should be permitted to amend their complaint to seek declaratory relief.

¶ 19                            Standard of Review

¶ 20     Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as

a matter of law. 735 ILCS 5/2-1005 (West 2012); *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. We review *de novo* a trial court's order granting summary judgment. *Id*. When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. See *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. Moreover, whether plaintiffs were entitled to *mandamus* relief—namely, whether the trial court should have ordered the Director to certify that they were "qualified retired law enforcement officers"—depends on the proper interpretation of LEOSA. The interpretation of a statute is a question of law, which we also review *de novo*. *People v. Simpson*, 2015 IL 116512, ¶ 29.

¶ 21                                                            *Mandamus*

¶ 22          Where a public official has failed or refused to comply with requirements imposed by statute, the court may compel the official to comply by means of a writ of *mandamus*, provided the requirements for the writ have been satisfied. *Noyola v. Board of Education of the City of Chicago*, 179 Ill. 2d 121, 132 (1997). An extraordinary remedy, *mandamus* enforces the performance of a public officer's official nondiscretionary duties as a matter of right. *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 433 (2007). For *mandamus* to issue, a plaintiff must establish material facts that demonstrate (1) an unequivocal right to the requested relief, (2) an unequivocal duty on the defendant to act, and (3) defendant's unequivocal authority to comply with an order granting *mandamus* relief. *Id*. at 433-34. *Mandamus* cannot be used, however, to compel a public official to perform an act that requires the exercise of his or her discretion. *McFatridge v. Madigan*, 2013 IL 113676, ¶ 17 ("A writ of *mandamus* is appropriate when used to compel compliance with mandatory legal standards but not when the act in question involves the exercise of a public officer's discretion."); *Hadley v. Ryan*, 345 Ill. App. 3d

297, 301-02 (2003) (*mandamus* could not be used to compel attorney general to prosecute a claim where statute provides decision to prosecute was discretionary). " '*Mandamus* cannot be used to direct a public official or body to reach a particular decision or to exercise its discretion in a particular manner, even if the judgment or discretion has been erroneously exercised.' " *Mabwa v. Mendoza*, 2014 IL App (1st) 142771, ¶ 36 (quoting *Crump v. Illinois Prisoner Review Board*, 181 Ill. App. 3d 58, 60 (1989)).

¶ 23    Plaintiffs contend they are qualified retired law enforcement officers with a right to a concealed carry permit under LEOSA and, accordingly, the Director had a duty to certify their status as qualified retired law enforcement officers and was authorized to do so. Because all three requirements were met, plaintiffs insist that certifying Form 3 is a purely ministerial act and the trial court erroneously deferred to the Director's interpretation of LEOSA and his conclusion that plaintiffs do not meet the statutory requirements to be deemed qualified retired law enforcement officers. Plaintiffs assert that the trial court, not the Director, should determine whether they meet the LEOSA requirements and if the court finds that they do, it should order the Director to perform the ministerial task of certifying the form.

¶ 24    For support, plaintiffs cite *State Board of Elections v. Shelden*, 354 Ill. App. 3d 506 (2004). In *Shelden*, the county clerk stopped including voters' telephone numbers in the voter-registration information sent to the State Board of Elections. The Board of Elections filed a complaint for *mandamus*, requesting that the trial court enter an order directing the county clerk to furnish and release to it the voters' telephone numbers, as required by statute. *Id*. at 508. The trial court granted the complaint, in part, and the appellate court affirmed. Section 4-8 of the Election Code (10 ILCS 5/4-8 (West 2002)) expressly imposed a nondiscretionary duty on the county clerk to furnish the Board of Elections with a copy of any electronic data-processing

information containing voter-registration information, including the voter's "telephone number, if any." *Shelden*, 354 Ill. App. 3d at 512. Thus, the clerk had no discretion to determine whether to furnish those phone numbers to the State Board of Elections. *Id*. at 513.

¶ 25 Plaintiffs argue that in *Shelden*, rather than deferring to the county clerk's decision to stop providing voters' telephone numbers to the Elections Board, the court analyzed the Election Code and its related provisions to define the scope of the county clerk's legal duty. Similarly, plaintiffs assert, the trial court should not have deferred to the Director's erroneous interpretation of the statute but should have examined the statute to define his authority. Plaintiffs suggest that if the court had done that, it would have concluded that the Director has no discretion under the statute to determine whether former employees meet the statutory requirements to be deemed a qualified retired law enforcement officer.

¶ 26 We disagree. First, *Shelden* is not analogous. In *Shelden*, a plainly nondiscretionary statutory provision was in dispute. The statute required the county clerk to furnish the Board of Elections with voter's "telephone number, if any." 10 ILCS 5/4-8 (West 2002). LEOSA does not contain similar nondiscretionary language ordering an agency to certify a former employee; thus, the trial court's task was not as clear cut. Further, the trial court did not simply defer to the Director's interpretation of the statute. The learned judge was thorough. The judge carefully reviewed LEOSA, finding "Congress has *** [ceded] certain powers to the state in determining whether or not an individual meets that state's definition of a law enforcement officer." The court also examined Form 3 and found that it "does not read ministerially. That form contemplates that the Director has to decide whether or not the applicant is a law enforcement officer." The court noted that if the form simply asked whether the applicants worked for the Department and asked the Director to check a yes or no box, completing the form would be a

ministerial act. But because the form requires "an analysis of whether or not the person was a law enforcement officer," the Director is required to make a decision and thus exercise discretion, and his or her actions are not ministerial.

¶ 27    Plaintiffs' reliance on *Duberry v. District of Columbia*, No. 15-7062, 2016 WL 3125217 (D.C. App. June 3, 2016), is also misplaced. In *Duberry*, which was released shortly before oral arguments, the plaintiffs were four retired correctional officers who filed a declaratory judgment action under 42 U.S.C. § 1983 (2012), alleging that they met the requirements for a permit under LEOSA but that they could not obtain the necessary firearms training because the District of Columbia refused to certify that, as correctional officers, they had a statutory power to arrest. *Duberry*, 2016 WL 3125217, at *2. The only question was whether, in enacting LEOSA, Congress created a federal right that is remediable under section 1983. The court answered in the affirmative but expressly stated that it was not addressing the issue before this court—whether the Director has discretion to decide if an applicant meets the statutory requirements to be verified as a qualified retired law enforcement officer. The *Duberr*y court stated, "[a]lthough a state may retain some discretion, for example, to the extent it concludes that a retired law enforcement officer seeking to exercise a LEOSA concealed-carry right is currently either not physically or mentally capable of being in responsible possession of a firearm *** [but] the issue of any discretion it may retain is not before this court." *Id*. at *5. Thus, *Duberry* does not support the plaintiff's argument that the Director had no discretion in deciding whether to certify Form 3.

¶ 28    The right conferred by LEOSA—to carry a concealed firearm across state lines without being subject to prosecution—is conditioned on meeting certain, express qualifications. The statute states that to obtain a permit, an individual must be a "qualified retired law enforcement officer" possessing photo identification and certification issued by his or her former agency

confirming that he or she was a law enforcement officer and has met certain firearms qualification standards. 18 U.S.C. § 926C(a), (d) (2006). Unlike the Election Code provision at issue in *Shelden*, LEOSA does not order the Director to certify that former employees met the seven requirements. It requires the Director to determine whether a former employee was regularly employed as a "law enforcement officer" as defined in LEOSA. In addition, it grants the Director discretion in determining whether or not a former employee satisfied the seven requirements under the statute. Thus, certification of Form 3 is not a ministerial act, like signing the form, and therefore, *mandamu*s relief was unwarranted.

¶ 29   Plaintiffs also assert the Director had a duty to certify Form 3 because the Peace Officer Firearm Training Act provides that all "agencies which employ or utilize peace officers, or that certify retired law enforcement officers qualified under federal law to carry a concealed weapon, shall cooperate with the Board by furnishing relevant information which the Board may require." 50 ILCS 710/3 (West 2012). Plaintiffs assert that because they are qualified retired law enforcement officers and Form 3 is relevant information required by the Board, the Department "shall" cooperate with the Board by furnishing that document. While Form 3 is required by the Board, section 43 of the Act does not require the Director to certify plaintiffs as qualified retired law enforcement officers. It only requires that once the Director makes that determination, he or she submit the "relevant information," that is, Form 3. As noted, under LEOSA, the Director has discretion and authority to determine whether a former employee meets the requirements of a retired qualified law enforcement officer. Section 3 of the Peace Officer Firearm Training Act does not diminish that authority and discretion.

¶ 30   Plaintiffs next contend they met all of the statutory requirements to be deemed a qualified retired law enforcement officer. They explain in detail how their positions as parole agents

qualified them as law enforcement officers who were "authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and had statutory powers of arrest." But having decided that the Director had discretion to determine whether plaintiffs were qualified retired law enforcement officers, we need not decide that issue. A plaintiff must not only prove his or her unequivocal right to the requested relief but also that defendant had an unequivocal duty to act. The Director had discretion in deciding whether to certify plaintiffs as qualified retired law enforcement officer and therefore, did not have a duty to act. As noted, " '*[m]andamus* cannot be used to direct a public official or body to reach a particular decision or to exercise its discretion in a particular manner, even if the judgment or discretion has been erroneously exercised.' " *Mabwa*, 2014 IL App (1st) 142771, ¶ 36 (quoting *Crump v. Illinois Prisoner Review Board*, 181 Ill. App. 3d 58, 60 (1989)). Thus, even if the Director erred in finding that plaintiffs were not qualified retired law enforcement officers, *mandamus* cannot be used to reach a different decision.

¶ 31                                                    Declaratory Judgment

¶ 32        Plaintiffs alternatively ask that even if this court decides that *mandamus* relief is not warranted, we remand the case to permit amending the complaint to add a declaratory judgment count. But, arguments raised for the first time in a reply brief will not be addressed by the appellate court. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2014 IL App (1st) 130962, ¶ 20. And while plaintiffs mention remand to amend in one sentence in their opening brief, a nominal argument appears in the concluding paragraphs of the reply brief.

¶ 33        Waiver aside, section 2-616(a) of the Code provides, in part, that amendments to pleadings may be allowed on "just and reasonable terms" at any time *before final judgment* to

enable the plaintiff to sustain the claim brought in the suit. 735 ILCS 5/2-616(a) (West 2012) (emphasis added). The right to amend is "neither absolute nor unlimited" (*I.C.S. Illinois, Inc. v. Waste Management of Illinois, Inc.*, 403 Ill. App. 3d 211, 219 (2010)). The general rule is that where a trial court dismisses a complaint and a plaintiff does not seek leave to amend, the cause of action must stand or fall on the sufficiency of the stricken pleading. *Stamp v. Touche Ross & Co.*, 263 Ill. App. 3d 1010, 1019 (1993). This general rule best serves the interests of judicial economy and prevents a plaintiff from circumventing the rule against interlocutory appeals. *Id.* (party should not ordinarily be permitted to stand on pleadings before trial court and then seek leave to amend in the appellate court after adverse ruling).

¶ 34        An exception to this general rule occurs when the supreme court decides a case that favorably affects a potential count while the case is pending before the appellate court. *Miller v. Gupta*, 174 Ill. 2d 120, 128 (1996). That exception does not apply here. Further, a request to amend that is nothing more than an attempt to evade an unfavorable summary judgment outcome should not be granted. See *Freedberg v. Ohio National Insurance Co.*, 2012 IL App (1st) 110938, ¶ 44. Plaintiffs had ample opportunity to amend their complaint before the entry of the final judgment against them and, for unknown reasons, did not elect to act.

¶ 35        Plaintiffs also argue that section 2-617 of the Code (735 ILCS 5/2-617 (West 2012)) supports their argument that they should be permitted to amend their complaint. Under section 2-617, where a plaintiff has sought the wrong remedy and the pleading contains facts entitling the plaintiff to relief on a different legal theory, the court may permit the pleading to be amended. 735 ILCS 5/2-617 (West 2012). We make no judgment as to whether a declaratory judgment action is a viable cause of action for individuals, like the plaintiffs, who assert they are qualified

retired law enforcement officers. But in this case and at this stage of the proceedings, the request to amend the complaint to add an alternate form of relief comes too late.

¶ 36        Under these circumstances, we refuse in the first instance to entertain remand for a matter that should have, and could have, been raised and dealt with by the trial court before the appeal was perfected.

¶ 37        Affirmed.