2024 IL App (1st) 231433-U

SIXTH DIVISION
November 1, 2024

No. 1-23-1433

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| NIVALDO MONTES, DDS and MONTES DDS, SC, an Illinois corporation, | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) ) | Appeal from the Circuit Court of Cook County, Chancery Division |
| v. | ) ) | |
| ARACELI GOMEZ PIETRZYK, MARIO GARCIA, MARIA GARCIA, FOSTER & ASSOCIATES, CPA, LLC, an Oregon limited liability company, CARL FOSTER, and DEBRA FRANZKE, | ) ) ) ) ) ) ) ) | No. 2020 CH 04597

The Honorable Anna Helen Demacopoulos, Judge Presiding. |
| Defendants-Appellees. | ) ) | |

PRESIDING JUSTICE TAILOR delivered the judgment of the court.
Justices C.A. Walker and Gamrath concurred in the judgment.

**ORDER**

¶ 1  *Held*: The judgment of the circuit court is affirmed. Because the plaintiffs' malpractice complaint was time-barred under the discovery rule, the circuit court properly granted summary judgment to defendants and properly denied plaintiffs' post-summary judgment motions.

¶ 2                                    I. BACKGROUND

¶ 3    Nivaldo Montes owned a dental practice. His former office manager and bookkeeper, Araceli Gomez-Pietrzyk, allegedly stole from his practice for more than two decades. In June of 2020, Montes and his professional dental practice group (together, Montes) filed a complaint against Gomez-Pietrzyk, Gomez-Pietrzyk's sister Maria Garcia, Gomez-Pietrzyk's brother-in-law Mario Garcia, and the dental practice's former accountants: Carl Foster, Deborah Franzke, and their firm, Foster & Associates (F&A). The complaint against Gomez-Pietrzyk alleged that she "engaged in several schemes to embezzle funds from the Practice," including "inflat[ing] the hours that she and other family members worked so that they could claim entitlement to higher wages, *** writ[ing] off accounts for services rendered to her family members without authorization," and "pay[ing] herself and other employees directly from the Practice's operating accounts, rather than using the Paychex payroll service, which would have automatically withheld payroll taxes." The complaint alleged that Gomez-Pietrzyk "concealed these acts by classifying many of these transactions as 'employee loans' to the practice without basis, and without [Montes's] knowledge or consent."

¶ 4    The first amended complaint asserted a single count of professional malpractice against F&A, which alleged that F&A breached their duty to Montes by "[f]ail[ing] to take reasonable steps to prevent Gomez-Pietrzyk from carrying out her embezzlement scheme; *** [f]ail[ing] to take reasonable steps to alert [Montes] of Gomez-Pietrzyk's fraudulent scheme when they knew or should have known about the fraud; *** [p]repar[ing] and fil[ing] tax returns in conformance with Gomez-Pietrzyk's fraudulent bookkeeping that did not properly account for the Practice's tax obligations; *** [f]ailing to take reasonable steps to advise Dr. Montes of known errors in the tax returns that they prepared;" and "[o]therwise fail[ing] to exercise due care to carry out their duties

2

to [Montes]." In October of 2020, F&A filed a counterclaim against Montes for unpaid professional fees. After discovery, F&A moved for summary judgment, asserting that Montes's claim was time-barred because it was filed beyond the applicable two-year limitations period. 735 ILCS 5/13-214.2(a) (West 2020).

¶ 5 For support, F&A pointed to Montes's answer to one of its interrogatories, which requested information about Montes's communications with F&A. In his response, Montes stated:

"Sometime in September of 2017, Dr. Montes spoke to Carl Foster over the telephone. During this conversation, Foster advised [Montes] that for several years the Practice had been issuing wages as advancements and not reporting the wages or paying the necessary taxes related to wages. This was the first time that anyone from [F&A] communicated with Dr. Montes directly regarding the issue related to reporting wages to employees. At this time, [Montes] had no knowledge that this conduct was taking place for several years. Additionally, [Montes] had no knowledge of Gomez-Pietryzk's fraud. This caused [Montes] to question Gomez-Pietrzyk's bookkeeping practice. Gomez-Pietrzyk responded by falsely stating that she engaged in the practice of recording payments as advancements because the practice lacked sufficient income to cover the operating expenses. This was a material misrepresentation which concealed Gomez-Pietrzyk's theft. In fact, any deficiency in operating income resulted from Gomez-Pietrzyk's misappropriation of Practice funds."

¶ 6 During his deposition, Montes similarly admitted that during his September 2017 phone call with Foster, Foster "apprise[d]" him of the fact that "the practice had been issuing wages as advancements and not reporting the wages or paying the necessary taxes related to wages" and that this had been going on for years, which "caused [Montes] to question Gomez-Pietrzyk's

bookkeeping practice." Montes said that after this conversation, he "did an investigation to determine what to make of what [Foster] was telling [him]." Montes also admitted that Foster said these issues "were detrimental to [his] practice that should be looked into relating to how the bookkeeping was being done," and that if he had "hired an outside person to look into his booking and finances" at that time, they "probably would have seen something was going on." Montes did not investigate further at that time, however, because he "trusted" Gomez-Pietrzyk and accepted the explanation she gave him about the bookkeeping irregularities.

¶ 7    F&A argued that because Montes's testimony established that he was on notice that he had sustained an injury that was wrongfully caused in September 2017, his complaint, which was not filed until June of 2020, was barred by the two-year statute of limitations.

¶ 8    In response, Montes submitted an affidavit, in which he stated that in his September 2017 phone call with Foster, Foster "did not inform [him] *** that [Gomez-Pietrzyk] was not properly reporting her own wages or the wages of [his] employees." He averred that Foster simply "advised [him] that [he] should be paying [himself] more salary just as he had advised [him] in prior years" and said, "I had no prior knowledge that [Gomez-Pietrzyk] was not properly reporting employee wages and that as a result of that practice my income was being overstated *** until well after [Gomez-Pietrzyk] quit my employment" in 2018.

¶ 9    After hearing arguments from the parties, the circuit court granted F&A's motion for summary judgment. There is no transcript of the hearing, but the Bystander's Report indicates that the court found no genuine issue of material fact and that the statute of limitations had lapsed prior to the suit being filed. It stated that Montes admitted that he was on notice of "advances" being made to his employees in September 2017, and because he did not authorize these advances, he was on inquiry notice of all defalcations by the bookkeeper and his accountant that could have

been discovered on reasonable inquiry. The court then entered final judgment pursuant to Supreme Court Rule 304(a).

¶ 10    Montes subsequently retained new counsel, who filed a motion to reconsider the grant of summary judgment to F&A. In his motion, Montes argued that he did not have actual knowledge of any injury until 2018, and that no damages existed in September 2017. He also argued for the first time that because F&A had filed a counterclaim, this "waive[d] the statute of limitations as to the complaint" under section 5/13-207 (735 ILCS 5/13-207 (eff. May 27, 2022)) of the Code. Montes also moved to amend his answer to F&A's counterclaim and to assert his own counterclaim, which alleged essentially the same professional malpractice claim against F&A that Montes had included in his initial complaint.

¶ 11    In response, F&A pointed out that the discovery rule does not require actual knowledge, and that a reasonable business owner in Montes's situation would have conducted a thorough investigation of his books in September 2017. F&A also pointed out that Montes's damages argument was contradicted by the allegations in his complaint, which stated that "Gomez-Pietrzyk made 376 unauthorized payments from Dr. Montes's practice to herself totaling over $480,000 from 2007 to 2013," and asserted there is no requirement that a plaintiff discover the full extent of his injuries before the statute of limitations accrues. Finally, F&A argued that because Montes failed to raise his section 13-207 argument in his response to its motion for summary judgment, he waived his right to assert this issue. Alternatively, it argued that section 13-207 applies only where a defendant files a counterclaim "which would clearly have been time barred but for the operative impact of section 13-207," which is not the case here. It pointed out that its counterclaim was timely filed because it was governed by the ten-year limitations period that governs claims for breach of written contracts, so section 13-207 did not apply.

¶ 12   The record does not contain a transcript or a Bystander's Report of the hearing on Montes's post-summary judgment motions. The court's written order indicates that it denied Montes's motion to reconsider as well as his motion to amend his answer to F&A's counterclaim and to add a counterclaim, and found there was no just reason to delay the appeal or enforcement of the order under Supreme Court Rule 304(a). The circuit court then allowed F&A to voluntarily dismiss its counterclaim. Montes timely appealed, and proceeds before us *pro se*.

¶ 13                              II. ANALYSIS

¶ 14                              A. Jurisdiction

¶ 15   We have jurisdiction over this appeal under Illinois Supreme Court Rule 304(a), which permits an appeal to be taken from a final judgment "as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. Sup. Ct. R. 304(a) (West 2022). The trial court made such a finding here, and Montes timely appealed.

¶ 16            B. The Circuit Court Properly Granted Summary Judgment to F&A

¶ 17   Montes argues that the trial court reversibly erred when it granted summary judgment to F&A. Under section 2-1005(c) of the Code (735 ILCS 5/2-1005(c) (West 2020)), summary judgment is properly granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To determine whether a genuine issue of material fact exists, the court must construe the facts strictly against the moving party and in the light most favorable to the nonmoving party. *Larson v. Crosby,* 2024 IL App (4th) 230646, ¶ 51. We review the trial court's grant of summary judgment *de novo. Williams v. Tissier*, 2019 IL App (5th) 180046, ¶ 25.

6

¶ 18    Montes brought his claim against F&A in June of 2020. Any action against an accountant "for an act or omission in the performance of professional services shall be commenced within 2 years from the time the person bringing an action knew or should reasonably have known of such act or omission." 735 ILCS 5/13- 214.2(a) (West 2020). "Discovery for purposes of the statute of limitations may rest upon so-called inquiry notice, where '[o]nce a party knows, or reasonably should know, both of his injury and that the injury was wrongfully caused, the injured person has the burden to inquire further as to the existence of a cause of action.' " *Carlson v. Michael Best & Friedrich LLP*, 2021 IL App (1st) 191961, ¶ 81 (quoting *Brummel v. Grossman,* 2018 IL App (1st) 162540, ¶ 26). "A person knows or reasonably should know an injury is 'wrongfully caused' when he or she possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Carlson v. Fish,* 2015 IL App (1st) 140526, ¶ 23 (quoting *Hoffman v. Orthopedic Systems, Inc.*, 327 Ill. App. 3d 1004, 1011 (2002)). "[K]nowledge that an injury has been wrongfully caused 'does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action.' " *Janousek v. Katten Muchin Rosenman LLP*, 2015 IL App (1st) 142989, ¶ 21 (quoting *Castello v. Kalis*, 352 Ill. App. 3d 736, 744 (2004)); see also *Shrock v. Ungaretti & Harris Ltd.,* 2019 IL App (1st) 181698, ¶ 50 ("it does not matter whether the plaintiff knows or suspects who the wrongdoer actually is"); *Guarantee Trust Life Ins. Co. v. Kribbs*, 2016 IL App (1st) 160672, ¶ 30 (the notion that the identity of the party who caused the plaintiff's injury is a prerequisite to the commencement of the running of the statute of limitations has been "repeatedly rejected by our courts."). As long as a party knows or reasonably should know both of his injury and that it was wrongfully caused, "the burden is upon plaintiff to inquire further as to the existence of a cause of action." *Hoffman,* 327 Ill. App. 3d at 1011.

¶ 19    Here, Montes admitted in his answer to interrogatories as well as in his deposition testimony that he learned from Foster in September 2017 that "the Practice had been issuing wages as advancements and not reporting the wages or paying the necessary taxes related to wages," a practice which Foster believed was "detrimental to [Montes's] practice that should be looked into relating to how the bookkeeping was being done." Montes admitted that this conversation "caused [him] to question Gomez-Pietrzyk's bookkeeping practice" and to do "an investigation to determine what to make of what [Foster] was telling [him]."

¶ 20    Although Montes stated in his subsequent affidavit that Foster "did not inform [him] *** that [Gomez-Pietrzyk] was not properly reporting her own wages or the wages of [his] employees" during the September 2017 call and said he "had no prior knowledge that [Gomez-Pietrzyk] was not properly reporting employee wages *** until well after [Gomez-Pietrzyk] quit [his] employment" in 2018, this affidavit directly contradicts Montes's earlier sworn interrogatory response and deposition testimony, where he unequivocally admitted that in September 2017, Foster informed him of the "detrimental" bookkeeping issues regarding the non-reporting of employee wages. Therefore, Montes's affidavit does not create any genuine issues of material fact sufficient to defeat F&A's grant of summary judgment. See *James by James v. Ingalls Memorial Hospital*, 299 Ill. App. 3d 627, 635 (1998) (in cases involving summary judgment, a counter affidavit "does not place in issue material facts that were removed from contention by a party's deliberate, unequivocal admissions under oath in a deposition"); *Demos v. National Bank of Greece,* 209 Ill. App. 3d 655, 660 (1991) (a plaintiff "cannot be allowed to contradict his prior, sworn deposition testimony via an affidavit"); *Schmahl v. A.V.C. Enterprises, Inc.,* 148 Ill. App. 3d 324, 331 (1996) ("a party may not create a genuine issue of material fact by taking contradictory positions, nor may he remove a factual question from consideration just to raise it

anew when convenient"). "The judicial policy behind this rule is that once a party has given sworn testimony, he should not be allowed to commit perjury and change his testimony so as to avoid the consequences of his prior testimony." *Commonwealth Eastern Mortgage Company v. Williams*, 163 Ill. App. 3d 103, 109 (1987).

¶ 21     Montes also contends that "the September 2017 phone call from Carl Foster did not provide [him] with sufficient information to trigger the discovery rule," but Foster told Montes in this call that his practice had been issuing wages as advancements to his employees for years without reporting the wages or paying the necessary taxes related to wages, and Montes admitted that this caused him to question Gomez-Pietrzyk's bookkeeping. Montes's decision to accept Gomez-Pietrzyk's explanation for the bookkeeping irregularities that Foster had flagged for him because he "trusted" her instead of conducting an independent investigation of her bookkeeping practices "does not excuse [him] from failing to comply with the statute of limitations." *Hoffman*, 327 Ill. App. 3d at 1011. Even if Montes lacked actual knowledge of Gomez-Pietrzyk's wrongdoing at that time, "[t]he discovery rule has never been interpreted to delay commencement of the statute of limitations until a person acquires actual knowledge of negligent conduct. Rather, it has been interpreted to delay commencement until the person has a reasonable belief that the injury was caused by wrongful conduct thereby creating an obligation to inquire further on that issue." *Dancor Int'l Ltd. v. Friedman, Goldberg & Mintz,* 288 Ill. App. 3d 666, 673 (1997).

¶ 22     Montes next argues that the statute of limitations against F&A did not start to run until he "file[d] a lawsuit against [Gomez- Pietrzyk] for the same injury." He relies on *Dancor* and *Janousek v. Katten Muchin Rosenman LLP,* 2015 IL App (1st) 143503 for support, but neither case supports his position. In *Janousek,* plaintiff brought suit against a law firm and one of its lawyers. *Id*. ¶ 1. The trial court granted defendants' motion for summary judgment on the basis

that plaintiff's suit was barred by the statute of limitations. *Id.* ¶¶ 7-8. On appeal, plaintiff argued that the trial court erred "because, although he suspected defendants of wrongdoing [in 2009 when he filed his complaint against his former business associates], *** he did not know of their wrongdoing until after uncovering it through discovery in the underlying lawsuit." *Id.* ¶ 11. This court concluded that plaintiff "knew that he had been wrongfully injured no later than July 2009, and thus, even though he may not yet have known that defendants' representation was partly responsible and that their conduct gave rise to a cause of action, the statute of limitations began to run because [plaintiff] did have knowledge of the injury and that his injury was wrongfully caused." *Id.* ¶ 21. It therefore affirmed the trial court's grant of summary judgment, concluding that "the statute of limitation began to run no later than July 2009, when [plaintiff] filed his complaint against [his former business associates], more than two years before he filed his complaint against defendants." *Id.* ¶ 24.

¶ 23    In *Dancor*, the plaintiff brought a lawsuit in federal court in October 1990 against a former employee who maintained its corporate books. 288 Ill. App. 3d at 668-69. Plaintiff brought a separate suit against his former accounting firm in March 1993, alleging breach of contract and professional negligence. *Id.* at 668. The accounting firm defendants moved to dismiss, claiming the complaint was barred by the statute of limitations. *Id.* at 669. They argued that plaintiff "knew or should have known of [their] alleged acts or omissions on October 10, 1990," the date plaintiff filed its federal lawsuit against its former employee. *Id.* The trial court granted the accounting defendants' motion to dismiss, reasoning that "the information [plaintiff] had in its possession on October 10, 1990, *** was enough to put [plaintiff] on notice of a potential claim against [defendants]." *Id.* at 671. This court affirmed, reasoning that "[w]hile [plaintiff] may not have had full knowledge on October 10, 1990 that *** [defendants'] acts and omissions amounted to a

breach of the standard of care, it is clear that the knowledge [plaintiff] did possess at that time was sufficient to put it on notice of [defendants'] possible invasion of [plaintiff's] legally protected rights. *** At that point, [plaintiff] was required to investigate and inquire further[.]" *Id*. at 675.

¶ 24    Likewise here, Montes learned from Foster in September 2017 that "the Practice had been issuing wages as advancements and not reporting the wages or paying the necessary taxes related to wages," a "detrimental" practice that "should be looked into relating to how the bookkeeping was being done." Montes admitted that Foster's comments "caused [him] to question Gomez-Pietrzyk's bookkeeping practice" and to do "an investigation to determine what to make of what [Foster] was telling [him]." Therefore, this phone call was sufficient to put Montes on notice about a possible cause of action against both Gomez-Pietrzyk and F&A. See *Carlson v. Fish*, 2015 IL App (1st) 140526, ¶ 39 ("identification of one wrongful cause of [the plaintiff's] injuries initiate[d] his limitations period as to all other causes"); *Janousek,* 2015 IL App (1st) 142989, ¶ 21 ("even though [plaintiff] may not yet have known that defendants' representation was partly responsible and that their conduct gave rise to a cause of action, the statute of limitations began to run because [plaintiff] did have knowledge of the injury and that his injury was wrongfully caused"); *Guarantee Trust Life Ins. Co. v. Kribbs*, 2016 IL App (1st) 160672, ¶¶ 30-33 (statute of limitations accrued long before plaintiff knew which of its employees aided the original defendants); *Dancor*, 288 Ill. App. 3d at 671 ("the information [plaintiff] had in its possession *** was enough to put [plaintiff] on notice of a potential claim against [defendants]"). That Montes failed to perform an independent investigation to determine whether an actionable wrong was committed by either Gomez-Pietrzyk or F&A because he "trusted" Gomez-Pietrzyk and that he "shut his eyes to obvious facts" and "neglect[ed] to seek information that [was] easily accessible" (*J.S. Reimer, Inc. v. Village of Orland Hills,* 2013 IL App (1st) 120106, ¶ 36 (quoting *Vail v. Northwestern Mutual*

11

*Life Insurance Co.,* 192 Ill. 567, 570 (1901)), does not justify extending the statute of limitations period under our discovery rule jurisprudence. See *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171 (1981) ("once it reasonably appears that an injury was wrongfully caused, the party may not slumber on his rights"). In sum, because Montes had "sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct [wa]s involved" (*Hoffman,* 327 Ill. App. 3d at 1011) in September 2017, and yet he did not file his complaint against F&A until June 2020, the trial court's grant of summary judgment to F&A based on the statute of limitations was warranted.

¶ 25        C. The Circuit Court Properly Denied Montes's Post-Judgment Motions

¶ 26    Montes argues that the circuit court erred when it denied his motion to amend his answer to F&A's counterclaim and to file his own counterclaim. We review a circuit court's decision to grant or deny a motion to amend a pleading for an abuse of discretion. *Sheffler v. Commonwealth Edison Co.,* 2011 IL 110166, ¶ 69 (the decision to grant a motion to amend is within the circuit court's discretion, and a reviewing court will not overturn the circuit court's decision absent an abuse of discretion).

¶ 27    Montes argues that the circuit court erred by denying his motion to file his own counterclaim against F&A under section 13-207 of the Code. 735 ILCS 5/13-207 (eff. May 27, 2022)). F&A argues in response that Montes forfeited this issue by raising it for the first time in his motion to reconsider, after the circuit court had already entered summary judgment against him. "Arguments raised for the first time in a motion for reconsideration in the circuit court are forfeited on appeal." *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36; *Liceaga v. Baez*, 2019 IL App (1st) 181170, ¶ 28 ("A motion to reconsider is not the place for the inclusion of new arguments that could have been raised earlier.") Because Montes was represented by

counsel at the time and had "ample opportunity to amend [his] complaint before the entry of the final judgment against [him] and, for unknown reasons, did not elect to act" (*Foley v. Godinez,* 2016 IL App (1st) 151814, ¶ 34), he forfeited his section 13-207 argument. *Triumph Community Bank v. IRED Elmhurst, LLC,* 2021 IL App (2d) 200108, ¶ 48 ("legal theories and factual arguments not previously made are forfeited"); see also *Liceaga v. Baez,* 2019 IL App (1st) 181170, ¶ 29 (finding an argument was "waived" when it was made for the first time in a motion for reconsideration, after the trial court's initial order).

¶ 28    Even if we consider Montes's section 13-207 argument, it fails on its merits. Section 13-207 states that "[a] defendant may plead a set-off or counterclaim barred by the statute of limitation or the statute of repose, while held and owned by him or her, to any action, the cause of which was owned by the plaintiff or person under whom he or she claims, before such set-off or counterclaim was so barred, and not otherwise." 735 ILCS 5/13-207 (eff. May 27, 2022)). "Section 13-207 is a 'saving' provision that allows a counterclaim to proceed despite the failure to comply with the appropriate statute of limitations period," which recognizes that "litigants do not always promptly file every possible claim they may have" and instead, sometimes "refrain from filing until they are hauled into court as a defendant." *Byline Bank v. Integra Properties, Inc.,* 2021 IL App (1st) 201021, ¶ 17. Where a defendant "relies upon section 13-207 to bypass the time bar of the claim asserted in his counterclaim, it would be unfair and unwarranted to nevertheless permit it to defeat the claim in the plaintiff's complaint by reason of the passing of the same statute of limitations." *Cameron General Corp. v. Hafnia Holdings, Inc.,* 289 Ill. App. 3d 495, 508 (1997). Here, however, F&A did not "file a late claim" or "gain a tactical advantage by delaying in filing." *Byline Bank,* 2021 IL App (1st) 201021, ¶ 24. F&A's counterclaim, which was filed in October 2020, alleged breach of contract based on Montes's failure to pay for the accounting services F&A performed

for him pursuant to a written agreement. This agreement was subject to the 10-year statute of limitations governing written contracts. See 735 ILCS 5/13-206 (eff. Aug. 16, 2007) ("actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing *** shall be commenced within 10 years next after the cause of action accrued"). Because F&A's counterclaim was not time-barred, section 13-207 simply does not apply, and Montes cannot rely upon on it to circumvent the two-year statute of limitations on his professional malpractice claim.

¶ 29    If the circuit court had allowed Montes to amend his answer and add his counterclaim, which alleged essentially the same professional malpractice claim against F&A that had already been dismissed at summary judgment, the court "would essentially nullify the legislature's clear intent to establish a statute of limitations for such ***claims." *Byline Bank,* 2021 IL App (1st) 201021, ¶ 22. Accordingly, we find that the circuit court did not abuse its discretion when it denied Montes's post-judgment motions.

¶ 30                                    III. CONCLUSION

¶ 31    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 32    Affirmed.